Tilghman, C. J.
The plaintiffs, obtained a judgment against *289 the defendant by confession, in the Court of Common Pleas of Centre county, on which an execution was issued, by virtue of which, a levy was made on the defendant’s property. Before there was any sale of the property, certain transactions took place between the plaintiffs and defendant, in cousequence of which, the execution was suspended, and afterwards, on the application of the defendant, the Court of Common Pleas opened the judgment for the purpose of giving the defendant an opportunity of showing what sum should be.deducted from the judgment, by reason of payments made by him, or claims against the plaintiffs, which had arisen posterior to the judgment. The parties went to trial, on the. plea of payment, with leave to give the special matter in evidence. Several exceptions were taken to the opinion of the court, by the counsel for the plaintiffs, as well on points of evidence, as in the charge to the jury. But the principal contest -was, whether the defendant should be permitted to give evidence to the following effect. The defendant offered to prove, that he had a quantity of leather in the city of Philadelphia, which he proposed to deliver to tbe plaintiffs, to be sold by them, and the proceeds of sale applied to 'the payment of their judgment, to which proposal the plaintiffs acceded, as appeared by several letters which passed between the parties; and that this leather, in consequence of the misconduct of the plaintiffs, sold for less than its value. The defendant, therefore, claimed an allowance, equal to the real value of the leather. The plaintiffs -gave credit to the defendant for the nett proceeds of the sale, but refused to allow any thing beyond that. And their counsel contend, that even supposing the defendant may have suffered, by the plaintiffs misconduct, he is not entitled to any deduction from the judgment, on that account, but must take his remedy in an action for damages. In support of this position, many cases have been cited, which prove, that unliquidated damages are not the subject of a set off. The law is certainly'so, and if the defendant rested'his case on a set off, he could not be allowed more than the net proceeds of sale. But he founds his pretensions on a different principle. He sets up an equitable defence, by which he claims the right of an allowance of every thing to which he is entitled, on accotmt of the leather which the plaintiffs-agreed to sell for the purpose of satisfying their judgment. And I confess there appears great justice in this pretension, and great injustice in denying it. Consider the defendant’s situation. Under the pressure of an execution, he puts his property in the hands of the plaintiffs, in trust, that it shall be sold for the purpose of satisfying the execution. We must assume, (because the plaintiffs offered to prove it,) that in consequence of the plaintiffs mismanagement, or breach of orders, the property was sacrificed, so that the defendant has a just demand against them for the difference between the actual proceeds of sale, and ■ what they ought to have *290 been. Is it right that the plaintiffs should be permitted to credit the defendant for no more than the actual proceeds, and go on with their execution for the balance of their judgment, leaving the defendant to seek his remedy in another action, for the damages he has sustained from this very transaction ? That is really the only question. And to answer it in the affirmative, is so repugnant to my ideas of equity, that my mind revolts from it. I cannot sec the propriety of splitting up a transaction, which in its nature is indivisible. The defendant is entitled to a full account of his property from the plaintiffs. He entrusted it to them for the purpose of satisfying their demand against him ; and until the account is completely settled, the plaintiffs ought not to bo permitted to proceed with their execution. On the trial in the court below, the plaintiffs had notice of the evidence intended to be offered, and they never could have a more convenient opportunity of settling the whole dispute. It has some weight with me, that the Court of Common Pleas, in staying the plaintiffs execution, and letting the defendant in to this trial, assumed a kind of equity jurisdiction, which seems absolutely necessary to us, who have no Chancery, as the writ of audita querela, has fallen into disuse. To give a trial, in which the defendant would be cut off from a great part of his merits, would be relieving him by halves; and even considering the interest of the plaintiffs, it would be better for them to have the whole matter settled at once, than be delayed as to part of it, until a new action could be brought by the defendant, in order to ascertain what might be strictly called his damages, and that action brought to trial after running the usual course. I am of opinion, therefore, that there was no error in admitting the defendant’s evidence. At the same time, it will be understood, that I pass no opinion on the merits of the case, that being a matter solely for the consideration of the jury. I only say, that it-was proper the evidence should be heard. I will now proceed to the other exceptions taken by the plaintiffs, which, although numerous, are not difficult; and I will take them up in the order in which they were spoken to by the counsel. The one on which I have given my opinion, is marked No. £, in the assignment of errors. .No. 3, comes next. It is this, “that the court erred in admitting the testimony of George Wasson, as to the request made by the defendant, to John Singer, to send the leather to Pittsburg, and the communication of that fact by Wasson to the plaintiffs.” This evidence was proper, because it was the origin of the transaction, with respect to the leather. The defendant had a quantity of leather in Singer’s hands; which he wished Singer to send to Pittsburg to be sold, on the defendant’s account. This request was communicated to Singer, verbally, through Wasson. Singer declined sending the leather, because he had no correspondents in Pittsburg. Wasson then mentioned to the plaintiffs, that the defendant wished *291 to send his leather to Pittsburg, and the plaintiffs said, they would undertake it. This having been made known to the defendant, he wrote to the plaintiffs, and a correspondence took place,; which ended in the defendant’s sending an order on Singer to deliver the leather to the plaintiffs. To come to a full understanding of the matter, it was proper that the jury should be informed of all that had passed between the plaintiffs and defendant, and Wasson’s testimony was introductory and explanatory.
4th error. “The court overruled the testimony of George Was-son, as to what John Singer said, about the quality of the leather, which Wasson afterwards communicated to the defendant. ” This testimony was rightly overruled. . What Singer said, was not evidence; he was a competent witness, and was actually examined as a witness, and gave his opinion of the quality of the leather, on his oath.
5th error. “Admitting the deposition of George Jinshuts.” This exception has been abandoned, and very properly. The deposition was certainly evidence.
6th and 7th errors. These may be considered as one. “ The court left it to the jury to decide what was the contract between the parties,' and whether the plaintiffs were entrusted with a general or special agency.” Where a contract is wholly in writing, it is the office of the court, and not of the jury, to expound it. But where it is part written and part verbal, the whole may be left to the jury. This is frequently the case in mercantile transactions, consisting of letters, accounts, and verbal communications, where the written and parol evidence throw light on each other. And I think it was the case here. The origin of the dealing about the leather was, a verbal communication to the plaintiffs, that the defendant had leather in Philadelphia, which he wished to be sent and disposed of in Pittsburg, and a verbal declaration by the plaintiffs, that they were willing to undertake the business. I do not think, therefore, that the coui't was bound to separate the letters from the other evidence, and give their opinion ori them to thejury. This might not have been the proper way of coming at the intent of the parties. It was a case, on which the jury might be permitted to judge, on the whole evidence.
The 8th 9th and 10th errors, are in opinions of the court, expressed in their charge, concerning certain parts of the plaintiffs conduct, which were insisted on by the defendant’s counsel to be a breach of orders; and in an opinion on the question of general or special.agency. These opinions cannot be assigned as error, because, although the court did throw out some sentiments on the points I have just mentioned, yet immediately afterwards they told the jury expressly, and positively, that it toas for them, and not for the court to decide, from the whole evidence, what was the contract.. The jury could not suppose after this, that the court *292 had given a direction, which they were bound to regard as matter of law. But in a subsequent part of the charge, there does appear to me, to be a matter, (assigned as the 11th error,) in which the court gave an opinion an the law, and I think, erroneously. (The Chief Justice here read the 11th error). Now, without stopping to inquire whether a wish, distinctly expressed, in a letter from a principal to his factor, is equivalent to a command, where nothing more is said on the subject, yet it never can be, that a wish amounts to a command, where it is directly afterwards said, that the matter is submitted to the factor’s discretion. In the case before us, the defendant writes to the plaintiffs, that he thinks it would be better to send the leather to Pittsburg, and immediately adds, “although I shall trust to your honour to be doing for the best with the sole leather, for both parties.” Taking the whole together, it certainly was not a command, and in this respect, I am of opinion, the jury were misdirected.
The 12th error is, “that the jury having found a balance due to the defendant after satisfying the plaintiffs judgment, the court rendered judgment for the defendant against the plaintiffs, for that balance.” This was a palpable error. In no case is the defendant entitled to a judgment for a sum of money to be recovered of the plaintiff, except where he has given matter of defalcation in evidence, and a balance is found in his favour. And even then, judgment is not entered in the first instance. The verdict is recorded, and then the defendant may have a scire facias to recover the balance. But the present, is not a case of defalcation. Matter arose, after the judgment, which entitled the defendant to a deduction from the judgment. And the utmost he could ask, on his application to the court for relief was, that he should be discharged from the judgment.
One more error, the first in number, remains to be adverted to, viz. that the court erred, in not sustaining the plaintiffs’ challenge of John Rule, one of the jurors. The cause of challenge was, “ that he had been examined before arbitrators, as a witness for the defendant in this cause, and given testimony on a point material to the issue.” A juror is a competent witness, and therefore it cannot be a rule, that one cannot be a juror, because he has given testimony in the same cause, before another tribunal. It may be however, that he may have given testimony of such a nature, as ought to exclude him from the jury, because it may show that he has formed an opinion in favour of one of the parties. In the present case, it does not appear what his testimony before the arbitrators was, and therefore it would be going too far to say, that there was error in overruling the challenge. Upon the whole, it is my opinon, that the judgment should be reversed, and a venire de novo awarded.
Gibson, J.
A judgment, while unaffected by any order of the *293 same or a superior court,’ is conclusive, and no matter, which might originally have been set up as a defence, can be pleaded to a scire facias post annum et diem; and our practice of opening judgments to let defendants into a defence, on original grounds, is founded in necessity to prevent a failure of justice. But where, as in this case, the matter of defence has arisen subsequently, no necessity requires the judgment to be disturbed, and the proper course in the court below was, to stay the execution in the meantime, and order the parties to go to issue on the plea of payment in an amicable scire facias. The form of the issue however, is not very material, and I am disposed to consider the matter, rather than the manner of the defence. This is said to have been put to the jury, not as set-off, but as direct payment. If the leather was received by the plaintiffs as the agents of the defendant, with an agreement that only the proceeds should be credited, I cannot see how the transaction can be used as a defence, otherwise than as affording matter of set-off, and without overturning all the decisions on the defalcation act. How is the fact? The plaintiffs have obtained judgment against the defendant for a debt, and are pressing him for payment. The defendant has a quantity of leather in the possession of Singer <§* Co. of Philadelphia, which he wishes to turn into cash, to meet his engagements, and for that purpose requests1 Singer fy Co. to send it to Pittsburg, where the article is supposed to be in demand. Singer <$• Co. refuse; on which Wasson, an agent of the defendant, calls on the plaintiffs, who inform him they know of a safe house in Pittsburg, and offer to have the leather disposed of there, if the defendant will send them an order for its delivery, by Singer <§• Co.; and agree to write to their correspondents in Pittsburg, in the mean time, to ascertain the state of the market. Wasson communicates this to the defendant, who writes to the plaintiffs, offers to send the order, and urges them to undertake the business, as he has no other means of paying them. The plaintiffs reply, that they have written to their friends, in Pittsburg, and inform the defendant of the state of the market, and reproaching him with want of punctuality, insist on being immediately paid; but agree to have their execution staid for a time, provided he will send them an order for the leather, in which event, they say they will sell it, either in Philadelphia, where the current price is sixteen cents the pound, or in Pittsburg, where prime quality brings from thirty to thirty one; and conclude with a promise, “to do the best with the article for the defendant’s interest.” In reply, the defendant, after excuses for the delay of payment, agrees to send the order, and encloses it; saying, that he trusts to the honour of the plaintiffs, to do the best with the article for the benefit of both parties, and intimates a wish that it may be sent to Pittsburg. Itishowever sold at auction in Philadelphia, at a reduced price: and the defendant sets the transaction up asa defence to the judgment, *294 insisting, that he is entitled to a credit over and above the proceeds of the sale, for whatever he could recover from the plaintiffs for having sacrificed his property. This is a concise, but accurate statement of the case: and I am at a loss to discover in it a single feature of a sale to the plaintiffs, or a circumstance to show that the leather vyas received by them in payment for as much as it was worth, taking into view the relative advantages of the Pittsburg and Philadelphia markets It seems clear'to me, that the plaintiffs were not purchasers, but factors, with an agreement to place the proceeds of the property to the defendant’s credit, and-of that he had the benefit. What further can he have but unliquidated damages for a real or supposed misfeasance of the plaintiffs in their office of agents? Put the ease of their having sold at a credit — undoubtedly the defendant, in case reasonable circumspection had been used, would have had to stand to the risque of the purchaser’s solvency. Take it that they had been able to sell for a sum beyond the current price — the defendant would have been entitled to the profit. Suppose the leather had been destroyed by fire, he would have had to bear the loss. In every point of view1, therefore, it remained the property of the defendant, and at his risque, the plaintiffs being liable only for their conduct in the character of agents: and indeed, the claim against them was put on that ground by the court below, and is avowedly advocated on the same ground here. Now we know very well, in what way an agent is answerable for misconduct in the discharge of his trust. Suppose the defendant had not been indebted to the plaintiffs, but had entrusted them with this property to make the best of it for him: nothing but the price actually received, could have been recovered by him on a count for money had and received to his use; and if there had in fact been misfeasance, satisfaction for it could have been recovered only in damages on a special count on the implied assumpsit to act with due diligence, skill, and fidelity. Can the. implied understanding, (for there is no exprees agreement,) that the plaintiffs were to retain the proceeds of the sale in satisfaction of their debt, vary the nature of the defendant’s remedy? We should make a contract for the parties were we to say, that misfeasance should have the effect of turning the plaintiffs into purchasers of the goods at the market price: that would be putting them in a worse situation than factors under a del credere commission, who, where they sell at a credit, only guarrantee payment of the price. Yet this impliéd undei’standing, that the proceeds were to be retained in satisfaction, is the only link of connection between the transaction set up, and the judgment. It certainly is not a fair construction of the intention of the parties to compel the plaintiffs to allow a credit for what the leather might by possibility sell for; or for any thing beyond the actual nett proceeds. They had the defendant in their power: he acknowledged he was in default, and begged for indulgence: on *295 which, and on condition that he wbuld put this leather into their hands as a means of raising money to answer the exigencies of their business,' they consented to stay the execution which they had against his property in Centre county, and which, had it been pursued, would have led to a sacrifice of his property there. Under these circumstances, they were not bound to wait till they had made an experiment to ascertain the highest penny that could possibly be obtained in PittsburgThis seems clear, from the defendants letter, enclosing the order on Singer S,- Co., in which he says, “I shall trust to your honour to be doing the best with the sole leather for both parties.” From this it is fair to infer, that his interest was not to be exclusively consulted without regard to the plaintiffs necessities. However, for fraud, or what is the same thing, a wanton sacrifice of the property, I admit, the plaintiffs would be answerable. But how answerable? Unquestionably in an action for damages. As regards convenience, there can be no doubt that the case falls within the reason of the rule which prevents the setting off of unliquidated damages. The claim of the defendant arose quasi ex delicto, and out of a transaction altogether distinct from the debt sought to bo recovered, which differs the ease from Heck v. Shener, and brings it within the reason of Gogel v. Jacoby; and in fact, within the letter of Gorbier v. Emery, Whart. Dig. 530, No. 29, which is directly in point. I am. of .opinion then, that the court erred in admitting evidence of misfeasance, on the part of the plaintiffs, and in directing the jury, that such misfeasance would afford an available ground of defence. As to the other points, it is necessary only to say, that I fully concur in what has already been advanced.
Duncan, J.
As there is no difference of opinion on the minor points, it is only necessary to express my opinion on the general defence of the defendant. Was it competent to him to ask relief from the judgment and execution, from the subsequent acts of the plaintiffs respecting them, or must he resort to an action against the plaintiffs for their alleged misconduct in disposing of the leather received by them to be sold, and the amount credited on the execution ?
If there was any breach of duty, any improper and injurious exercise of the plaintiffs authority, whereby the leather was sold for less than could have been procured for it, if due prudence had not been exercised, it is agreed on all hands, the defendant should have redress somewhere. My opinion is, that he was entitled to relief in. the form in which it has been administered in this action, not by way of set off, but either as an equitable defence, or frbm the superintending power of common law courts to prevent oppression, and their process from being used to unjustifiable ends. Whether the authority was general or special, an authority confined to a sale at Pittsburg, and an undertaking to send the leather to that mar *296 ket, or it was left to the discretion of the plaintiffs to sell, either at Philadelphia or Pittsburg, still' if the discretion was improperly used, to the injury of the defendant, the plaintiffs would be responsible to the amount of that injury. On the whole testimony, I incline to think, the defendant threw himself on the honour of the plaintiffs, trusting to their judgment, as to the place of sale. The expression of a preference of the Pittsburg market, and the reason given for that preference, would not amount to a mandate or a restriction, but was rather a recommendation; for the defendant concludes with a strong appeal to the plaintiffs, and relies on their judgment and integrity. “ I shall trust to your honour, to be doing the best with the leather for both parties.” If there was an abuse of the general authority, this would not be an unimportant consideration; and if the difference between a sale at Pitts-burg, and an auction sale at Philadelphia was considerable, it would have a bearing on the question, as to the amount of credit which the defendant ought to have on account of the leather. The defendant was in the power of the plaintiffs, they were urging a sale of his property on their execution; a negociation takes place, and they agree to stay the sale for a time, provided the defendant sent an order for the leather to be delivered to them by the return mail. They state the difference between the Philadelphia and Pittsburg prices ; and say they will either send it to Pittsburg, or sell it at Philadelphia; they will endeavour to do the best with it for the defendant’s interest. Certainly justice would demand from them a fair endeavour: and if the leather would have brought a reasonable price at Pittsburg, it ought not to have been sacrificed at Philadelphia; and if it has, (of which I say nothing, for that was for the jury,) the plaintiffs should give credit for it at the Pittsburg prices, deducting all reasonable expenses and charges. The leather was received as'part payment of the judgment and execution, to be credited for the sum it would have produced on a fair sale; the plaintiffs consider it received as part payment, and credit it for the amount of sale, so that the only question was a matter capable of liquidation, which in equity and good conscience, ought- to be the amount of satisfaction. This is the simple and obvious question, considering the plaintiffs in the most favourable view as consignees; and this is a consignment for payment of this debt, with instructions to sell at Philadelphia or Pittsburg, as they thought best, preferring Pittsburg, but trusting they would do for the best for his interest. Did the difference between the prices at these two places demonstrate to these consignees, that a regard to the interest of the consignor, required that the sale should be made at Pittsburg, and not at Philadelphia, and it was sold at a very inferior price at Philadelphia, this would be a violation of the duty of a consignee, and he should be chai’ged with the difference.
*297 The question would be, would a reasonable man act thus with his own property? Not where it is a, matter in which1 prudent men might differ in opinion, but where no prudent man could hesitate as to the line of conduct duty prescribed. A general agent is to use his discretion in a reasonable manner; not an arbitratry discretion, but arbitratrmm boni viri; applying all his understanding and information for the benefit of his employer.
This is a case in which a court of common law, by their inherent powers to prevent the abuse of their process, ought to grant relief in a summary way, by motion. Formerly the party was driven to his audita quiérela, a dilatory and expensive course. “ An audita querela lies where a defendant against whom judgment is recovered, and who is in danger of execution, or perhaps in execution, may be relieved upon good matter of discharge, since the judgment, as if the plaintiff hath given him a general release, or he hath paid the debt without procuring satisfaction on the judgment; in these and the like cases, an audita querela lies in the nature of a bill in equity, to be relieved against the oppression of the plaintiff. It is a writ of a most remedial nature, and seems to have been invented lest there should have been an oppressive defect of justice.” 3 Bl. Co?».406. But the indulgence now shown by courts of justice, in granting summary relief on motion, in cases of evident oppression has almost rendered useless this writ, and driven it quite out of practice, lb. 1. Ld. Raym. 439. It has been long disused, and is expensive, and courts will grant the same relief on motion by a special rule, particularizing the circumstances of the case. 4 Burr. 2287. So here on motion, stating the facts, and directing an inquiry into the truth of the facts, trying the question on the plea of payment with leave, &e; for the notice of special matter states the facts as particularly as an audita querela would; and this statement of facts serves all the purposes of the audita querela, without the delay and expense. A bill in chancery would accomplish the same end. Chancery would enjoin the proceeding, until the question was tried, and the damages ascertained, and on payment of the balance, if any, would grant a perpetual injunction. And here our courts, from necessity, must exercise this chancery power; for they are justly and equitably to try the issues between the parties. The trial proceeds, as if a scire facias quare cxecutionem non had issued, where, on the plea of payment, &c. or accord and satisfaction since the judgment, the merits may be decided as advantageously for the plaintiff as in an original action against him. This is not in the nature 'of- a tort which would die with the person. It arises ex contractu, and not ex delecto. If in this case, the plaintiffs had so carelessly kept the leather, that it had rotted, become greatly deteriorated, and had sold it as damaged leather, could it be doubted, but that they would be chargeable with it, at the selling price of good leather? What difference can it make, whether the diminu *298 tion of price is occasioned by deterioration of theleather, from careless keeping, or arises from sending it to a bad market, when there was a good one within reach? The case of Dunlop’s Lessee v. Speer, 3 Binn. 169, which was an ejectment, with an agreement to release on payment of certain sums, by instalments, and the judgment in ejectment was assigned to Shelter, to secure the payment of a certain sum L uied to Dunlop and Speer, by Shelter, and where there were articles of agreement between Dun-lop and Speer and Shelter, with covenants for payment of the money to Skelter, and other convenants by Shelter with them, on motion to set aside the habere facias possessionem the court refused to give time to Speer ta obtain a judgment against Shelter, on the covenants, in consequence of tortious acts done by him in breach of his covenants in the same articles. But that refusal was on the ground that these acts were merely torts; such as decoying the servants of Speer employed in his iron works, to leave him. But the court said, had the defendant alleged payment of money, or any thing which in its nature admitted of liquidation, there would be strong grounds’for the motion, which they refused, because the damages were not susceptible of liquidation, proceeding from acts ex delicto. There the payment of money was not alleged, nor any thing performed eo intentione, or directly with a view to satisfaction, and received as such. But here the agreement was to accept leather in satisfaction of the judgment, as far as the amount would go; to stay the execution, until the leather was sold, and when sold the amount to be credited. A sale was made, and a certain sum credited. But the defendant says, there was not a full credit given to him. That the plaintiffs sold in bad faith; that if they had acted as faithful agents — sold as they promised to do — either at Philadelphia or Pittsburg — whatever was the best for both parties — that a fair sale would have satisfied and extinguished the debt. In my opinion, natural justice required the inquiry to be made in this action. When I speak of bad faith, I do not mean intentional fraud, but crassa negligentia, a disregard of the defendant’s interest, to suit the plaintiffs’ convenience; a sacrifice, and not a fair sale of his property. Whether the evidence made out such case, was for the jury. But the defendant was entitled to bring his cause before a jury, and the court took what I consider as the just, if not the only course. To turn the defendant round to a tedious action against the plaintiffs, and in the mean time, another sacrifice to be made of his property, by a sheriff’s sale, to discharge that execution on which the leather had been received, to be sold fairly, and accounted for fairly on that execution, would be contrary to all my sense of equity; would be an oppressive defect of justice, and an evident oppression by the instrumentality of the law. Now this is just that which the audita querela was intended to redress, and which in modern times courts of justice accomplish by staying the execution *299 until justice can be done; and which in this state, where we have ho Court of Chancery, is always done by directing an issue in the action, to decide on this new matter, and where the issue, on the plea of payment with leave, &e. puts it on the power of the court justly and equitably to try and decide on this new matter, arising subsequent to the judgment, without the expense, delay and vexation of a new action, when, if the defendant did recover, his recovery would be too late, as the execution might ruin him inevitably, and'put him beyond the power of redemption. I do not speak of the merits in this cause. I do not pretend to form any opinion on them. But I am most clearly of opinion, that the defendant had a right on this issue, to have his defence, and the evidence to support it, before a jury. It could be more properly tried in that court where the judgment was; and it is for this reason that audita querela lies only .in the court where the judgment is given, they having the best knowledge of all the proceedings in the same cause.. 2 Bulst. 10.
judgment reversed, and a venire facias de novo awarded.