# M'Farland *against* Newman.

No *implied* warranty arises from an unfounded affirmation of soundness in the sale of a chattel; but for a deceitful representation of it, the remedy is by an action *ex delicto*.

A naked affirmation is not itself an *express* warranty, nor evidence of it; and though it may, in connection with other circumstances, be competent to show that the vendor had agreed to be responsible for the truth of it, yet the effect of oral words in constituting an express warranty, is determinable not by the court but by the jury.

ERROR to the common pleas of *Fayette* county.

Newman, the plaintiff below, brought an action of *assumpsit* against M'Farland on an alleged warranty of a horse passed to him as sound in all respects, but the colt-distemper. It was proved that the horse had a defluxion from the nose at the time of the bargain; that M'Farland assured Newman it was no more than the ordinary distemper to which colts are subject; and that it had been of only a few days' continuance: whereas it was testified that the horse had exhibited the same symptoms all the time M'Farland had him, (a period of ten or eleven months,) and the evidence was very strong that he had an incurable disease called glanders. It was testified also, that the person of whom M'Farland had him, had passed him away as a glandered horse, or at least had refused to say to M'Farland that he was otherwise; that M'Farland had been told of the true nature of the disease by another person; and that he himself had said he feared it was, or would become something worse than the distemper. The judge charged that *knowledge* of unsoundness without *denial* of it, would not entitle the

| 9w | 55 |
|---|---|
| 138 | 558 |

| 9w | 55 |
|---|---|
| 147 | 306 |

| 9w | 55 |
|---|---|
| 156 | 170 |

| 9w | 55 |
|---|---|
| 190 | 65 |

| 9w | 55 |
|---|---|
| 201 | 530 |

| 9 W | 55 |
|---|---|
| 22 SC | ²312 |

| 9 W | 55 |
|---|---|
| 27 SC ² | 73 |

| 9 W | 55 |
|---|---|
| f 29 SC | 478 |
| f 29 SC | 479 |
| 30 SC | ²187 |

| 9w | 55 |
|---|---|
| 37SC | 591 |

plaintiff to recover; but that "a positive averment, made by the defendant at the time of the contract, of a material fact, *is* a warranty: *that it is part or parcel of the contract.*" The jury found for the plaintiff, assessing damages at seventy-five dollars; and the defendant tendered a bill of exceptions.

*Howel* and *Dawson*, for plaintiff in error, cited 1 *Chit. Contr.* 134; 5 *Bingh.* 533; 7 *Serg. & Rawle* 481; 3 *Yeates* 462; 8 *Cowan* 25; 20 *Johns.* 196; 1 *Johns.* 274; *Ibid.* 196, 158; 4 *Johns.* 420, and 5 *Johns.* 354.

*Veech,* for defendant in error, cited 3 *Rawle* 23; *Yelv.* 21, a *in notis;* 3 *Term Rep.* 52; 2 *East* 450; 19 *Com. Law Rep.* 267; 2 *Harr. and G.* 495; 2 *Harr. and G.* 533; *Chit. Contr.* 135; 2 *Cowan* 488; and 8 *Cowan* 25.

The opinion of the court was delivered by

GIBSON, C. J.—On no subject have the decisions been so anomalous, as on warranty of chattels; and an attempt to arrive at a satisfactory conclusion about any principle supposed to be settled by them, would be hopeless, if not absurd. Of such jarring materials have they been compounded, that it is impossible to extract from them any principle of general application; and we are left by them in the predicament of mariners compelled to correct their dead reckoning by an observation. The civil law maxim is, doubtless, that a sound article is warranted by a sound price; but the common law courts started with the doctrine that though the sale of a chattel is followed by an implied warranty of title, and a right of action *ex delicto* for wilful misrepresentation of the quality; yet that the maxim *caveat emptor*, disposes of all beside. Thus was the common law originally settled; and the current of decision ran smooth and clear in the channel thus marked out for it, from the days of the year books, till within a few years past, when it suddenly became turbid and agitated; and, as in the case of promises conjured up to elude the statute of limitations, it finally ran wild. The judges, in pursuit of a phantom in the guise of a principle of impracticable policy and questionable morality, broke away from the common law, not, however, by adopting the civil law principle of implied warranty as to soundness, but by laying hold on the vendor's commendation of his commodity, and not at first as absolutely constituting an express warranty, but as evidence of it. I say the policy of this principle is impracticable, because the operations of commerce are such as to require that the rules for its regulation admit of as few occasions for reclamation as possible; and I say its morality is questionable, because I am unable to discern any thing immoral in the *bona fide* sale of an article represented to be exactly that as which the vendor had purchased it. It is to be remembered that I am speaking of the sale of a

thing accepted by the vendee after opportunity had to inspect and test it, and not of a sale in which he was necessarily compelled by the circumstances to deal on the faith of the vendor's description; nor yet of a sale on the concoction of which he was overreached by misrepresentation or trick. For the latter, he doubtless has his remedy; but not by an action *ex contractu;* and I therefore lay the vendor's motive out of the case as one that can have no legitimate influence on the question of warranty. But a positive assertion of what he knew not to be either true or false, is as unconscionable, and might be as injurious, as an intentional falsehood; and what is the vendee's remedy for it where the *scienter* can not be proved? The fallacy of the question, is in assuming that he ought to have any remedy at all. The relation of buyer and seller, unlike that of *cestui que trust,* attorney and client, or guardian and ward, is not a confidential one; and if the buyer, instead of exacting an explicit warranty, chooses to rely on the bare opinion of one who knows no more about the matter than he does himself, he has himself to blame for it. If he will buy on the seller's responsibility, let him evince it by demanding the proper security; else let him be taken to have bought on his own. He who is so simple as to contract without a specification of the terms, is not a fit subject of judicial guardianship. Reposing no confidence in each other, and dealing at arms length, no more should be required of parties to a sale, than to use no falsehood; and to require more of them, would put a stop to commerce itself in driving every one out of it by the terror of endless litigation. Yet such would be the tendency of the civil law *scion* which the judges have been laboring to engraft on the common law stock. It would be curious but unprofitable to to trace their advances towards the object by their footsteps in the cases. In none of them have I discovered any principle so plausible as that assumed by the judge who tried the present cause, that an averment of a material fact is part of the contract—a position, however, that will not bear a moment's examination. A sale is a contract executed, on which, of course, no action can be directly founded; but an action may be founded directly on a warranty, and it was doubted in Stuart *v.* Wilkins, *Doug.* 18, whether an action could be maintained for a breach of it in any other way; consequently, though it is a concomitant, it is also a collateral, self-existent contract; and no more a part of the sale, than a covenant of warranty in a deed, is part of the conveyance. It is not easy to say what notions had previously been entertained; but for a short time after the new doctrine had been broached, the distinction between representation and warranty was ostensibly observed. But in Wood *v.* Smith, 4 *Car. & Payne* 45, it was resolved "that whatever a person represents, *is* a warranty:" and thus the previous distinction, flimsy and inoperative as it had become in practice, was formally laid aside. And that the court went even further, is manifest from a glance at the circumstances. The plaintiff, chaffering for a mare, had said

[M'Farland v. Newman.]

interrogatively, " She is sound of course," and the defendant had replied " Yes, to the best of my knowledge;" but to the direct question, " Will you warrant her," he answered, " I NEVER WARRANT, I would not even warrant myself." Yet in the teeth of this peremptory refusal, it was adjudged that he had actually entered into an express warranty, and that the plaintiff had purchased on the faith of it. This conclusion is so forced, unnatural, and opposed to the very declared understanding and intent, that one is tempted to think the court had so far lost sight of the nature of a warranty as to have forgotten that it is a contract; " that the assent to every contract must be mutual; that every agreement must be so certain and complete that each party may have an action on it; and that it would be incomplete if either party withheld his assent to its terms." I quote these common place principles from Mr. Chitty's Treatise on Contracts, because I happen to have the book at hand. It is true, he says, that in many cases the law implies the party's assent to a promise; but, he also says, that such a contract is an implied one, and our business, at present, is with the elements of an express warranty. Now it is not, and can not be, a wholesome interpretation which involves a party in engagements he never dreamed of contracting, or to which he expressly refused to assent. If it is true, as it is said to be, that the plain, ordinary, and popular sense of words shall prevail, in preference to their strict grammatical sense, the decision in Wood *v.* Smith is more than questionable; for that the parties themselves put no such meaning on their discourse, as did the court, is evident from the plaintiff's request that the defendant would annex a warranty to his representation, and from the defendant's refusal to do so. After that, it is hard to see what room there was for interpretation. Even the civil law implication of warranty, if it were inadmissible on no other ground, would be repressed by it, on the foot of the maxim, *expressum facit cessare tacitum.* It may be said in extenuation, that the court did not hold the defendant to a warranty of the mare's soundness, but only to a warranty of soundness to the best of his knowledge. So much the worse. He had refused to enter into any warranty whatever; and it would have required no greater stretch to hold that he had entered into a general warranty of soundness, than to hold that he had entered into a special warranty of what he thought or knew. It would, too, have relieved the court from the awkwardness of resting the recovery on the collateral warranty of an immaterial fact which, assigned as a breach, would not have entitled the plaintiff even to nominal damages. And what makes the judicious grieve, is that all this violence to the ancient principles of the law was gratuitous; for, as in Chandler *v.* Lopus, as well as in the case before us, the plaintiff had a remedy as efficacious by an action for the deceit.

It will be perceived that these remarks do not touch the case of Borrekins *v.* Bevan, 3 *Rawle* 23, in which it was held that an

[*M'Farland v. Newman.*]

implied warranty arises, that the article is specifically that as which it is sold.

The essential error of the present case, however, is that the judge put a legal interpretation on oral words, and made it matter of positive direction. In the British courts, revision on writ of error is unfrequent; and points like the present, are usually determined on motions for new trials, in which the judges review not only the law, but the evidence in relation to its capacity to sustain the verdict. Hence, they began imperceptibly to deal indiscriminately with matter of fact and matter of law as equally within their province, without troubling themselves with distinctions as to what more properly belongs to the jury. In our own state, where abstract principles are settled by the court of the last resort on bills of exceptions, the functions of the judge and those of the jury, are more carefully separated and particularly defined. Now it is obvious that the sense of words used in conversation, and what the parties meant to express by them, is for the jury to determine, and not for the court. It is the conceded province of the court to expound the meaning of an instrument; but that it extends not to words uttered, of which there can be no tenor, is evident from the uniformity with which it is spoken of in reference to the interpretation of writings. The same thing is evident also from the nature of the judicial function, which is exercised only on facts supposed to be established. The terms of assent, where proof of the contract depends upon testimony, necessarily present a question of fact, while words embodied in an instrument readily admit of interpretation. Hence, it was said by Chief Justice Abbot, 2 *Barn. and Cress.* 634, "that where the whole matter passes in parol, all that passes may sometimes be taken together; but not always, because matters talked of at the commencement of a bargain, may be excluded by the language used at its termination: but if the contract be, in the end, reduced to writing, nothing which is not found in the writing, can be considered as a part of the writing." The distinction is more pointedly indicated in the American cases. "The counsel of the plaintiff," said Chief Justice Marshall in Levy *v.* Gadsby, 3 *Cra.* 186, "has also contended that although the paper writing produced would, on the face of it, import a usurious contract, yet that the jury might possibly have inferred from it, certain extrinsic facts which would have shown the contract not to have been within the act. But in this case, the question arises on a written instrument; and no question is more clearly settled than that the construction of *written* evidence is with the court." The converse was asserted in Sidewell *v.* Evans, 1 *Penns. Rep.* 383, where it was ruled that a judge can not be required to give a legal construction to the words of a witness. That the construction of an oral agreement belongs to the jury, and that parol evidence connected with a writing draws the whole from the court, is so often repeated in our own reports, that I forbear to enumerate the

[M'Farland v. Newman.]

cases; and I particularly advert only to Harper *v.* Kean, 11 *Serg. & Rawle*, 280, in which the expression of an opinion on the meaning of letters in connection with verbal communications was held not to be erroneous, only because the jury were directed to judge of the contract for themselves.

As the cause goes back to another jury, it is proper to intimate the principle on which a correct decision of it must depend. Though to constitute a warranty requires no particular form of words, the naked averment of a fact is neither a warranty itself, nor evidence of it. In connection with other circumstances, it certainly may be taken into consideration; but the jury must be satisfied from the whole, that the vendor actually, and not constructively, consented to be bound for the truth of his representation. Should he have used expressions fairly importing a willingness to be thus bound, it would furnish a reason to infer that he had intentionally induced the vendee to treat on that basis; but a naked affirmation is not to be dealt with as a warranty, merely because the vendee had gratuitously relied on it; for not to have exacted a direct engagement, had he desired to buy on the vendor's judgment, must be accounted an instance of folly. Testing the vendor's responsibility by these principles, justice will be done without driving him into the toils of an imaginary contract.

Judgment reversed, and a *venire de novo* awarded.