| 30 | 401 |
| 179 | 465 |

## Phipps *versus* Buckman.

An actual misrepresentation, coupled with an intention to deceive, even on a material point, will not invalidate a contract, unless the false statement were the means which produced it. And this is especially true, where the statement embodied the result of an opinion, and the means of knowledge was equally accessible to both parties.

APPEAL IN EQUITY from the Common Pleas of *Montgomery county*.

This was a bill in equity by William Buckman against Peter Phipps and James W. Phipps, for the specific performance of a contract for an exchange of lands. It appeared on the hearing, that the complainant had executed a deed to the defendants for the property agreed to be conveyed to them, and that they had gone into possession. The answer alleged fraud and misrepresentation on the part of the complainant, in reference to the contract. The facts are sufficiently set forth in the opinion of the court.

The court below made a decree for specific performance; from which this appeal was taken.

*Boyd*, for appellants, cited Bodine *v.* Glading, 9 *Harris* 54; *Brightly's Equity*, §§ 220, 221, 236; and argued, that the evidence showed such misrepresentation on the part of the complainant, in the inception of the contract, as ought, if not totally to invalidate it, at least to induce a court of equity to refuse its assistance, and leave the parties to their legal remedies.

*G. R. Fox* and *Boyer*, for the appellees.—This is not the case of an *executory* contract, but of a contract *equitably executed*. It is, in effect, a bill to compel conveyances of the *legal fee* between the respective owners of the *equitable fee* in the respective pro-

VOL. VI.—26

perties, under an *exchange already executed* by the parties, in pursuance of the written contract : *Adams' Eq.* 108. Nothing is better settled in equity, than that a man cannot keep his land and the price: Congregation *v.* Miles, 4 *Watts* 152; 2 *Story's Eq.*, § 759; Archer *v.* Bamford, 3 *Stark.* 175; Tiernan *v.* Roland, 3 *Harris* 441; Alexander *v.* Utley, 7 *Iredell's Eq.* 242 ; Small *v.* Atwood, 6 *Cl. & Fin.* 232; *Sugden on Property* 613.

Where the means of knowledge is equally accessible to both parties, each must judge for himself : Kintzing *v.* McElrath, 5 *Barr* 470 ; 1 *Story's Eq.*, §§ 190, 191, 197, 200 *a*, 201, 203; McFarland *v.* Newman, 9 *Watts* 57, 60 ; 2 *Kent* 484; Fisher *v.* Worrall, 5 *W. & S.* 484; *Chit. on Contr.* 681; *Batten on Specific Perform.* 152; Pratt *v.* Philbrook, 33 *Maine* 17; Bitting's Appeal, 5 *Harris* 216.

The opinion of the court was delivered by

PORTER, J.—The domain of law differs from that of morals. The one aims to prevent and redress actual wrong; the other to regulate those sentiments of the mind which prompt to outward action. Like concentric circles of unequal circumference, they embrace ground common to both; but there are sound moral maxims which fall beyond the sphere of jurisprudence. Every false statement is an immoral act, but not every false representation will invalidate a contract. An agreement is seldom made in which each party does not hope for some advantage to himself, and do something to obtain it. The seller extols, and the buyer depreciates the value of the commodity. For everything untruly said or done by either, sound morals will hold him to account; but the law allows the avarice of mankind thus to play in its orbit, until, by falsehood, damage has been done. The weight of modern authority preponderates in favour of the principle that an intention to deceive, and a false statement even on a material point, will not overthrow the bargain unless the statement was the means which produced it. This is especially true where the statement embodies the result of an opinion, and where the means of knowledge are equally accessible to both parties.

Better illustration of these principles than the present case is not required. The complainant was the owner of a mill, but not a miller. Of the respondents, one was practically acquainted with the business, and the other was purchasing for him. By the complainant's permission, on two occasions, in open daylight, when the machinery was in motion, they examined its condition. They examined, drew their conclusions, embodied their terms in a written instrument, and in that instrument said nothing of the repairs. Possibly he intended to cheat them, and said enough to diminish their vigilance. On this point, the testimony, if admissible, is not satisfactory; but the weight of the

[Phipps *v.* Buckman.]

evidence favours the conclusion that the contract was produced not by these representations, but by personal examinations which they were the more competent to make. Against this conclusion, a clause of warranty in the agreement would have guarded. If a purchaser "will buy on the seller's responsibility, let him evince it by demanding the proper security; else let him be taken to have bought on his own:" McFarland *v.* Newman, 9 *Watts* 57. In delivering possession of the house in Norristown, the respondents may have been the victims of a juggle. Here again the proof fails, that this was accomplished by any positive statement of the complainant. Delivery of possession of the house and of the mill was contemporaneous, and it may have been intended for the equal benefit of both parties. Very certainly a mistake was committed, in the hasty retreat from the mill. There was no notice and no offer of a restoration of possession. On the other hand, the tenants of the respondents continued to occupy the contiguous dwellings, their sawyer remained in the saw-mill, and their miller in the grist-mill. The case, therefore, shows an execution of the contract, by the delivery of possession of the bulk of the property, and the continued enjoyment of a benefit under it, unaccompanied by any proper offer of rescission. In this posture of affairs, nothing is left but to go forward and convey the legal title. In that title on either side, no defect has been pointed out; and the encumbrances complained of have been removed.

       Decree affirmed at the costs of the appellant.

THOMPSON, J., dissented.