# Hawn, Appellant, v. Stoler.

*Wills—Donatio mortis causa—Gift.*

The essential conditions of a donatio mortis causa are: (1) the subject of the donatio mortis causa must be personal property ; (2) the gift must be made by the donor in peril of death and to take effect only in case the giver dies; (3) there must be an actual delivery of the subject to or for the donee, in cases where such delivery can be made.

A woman being in bad health delivered to a friend a sum of money. Sometime thereafter the invalid, accompanied by her friend, went to a hospital in a distant city for treatment. The friend left the money at home. After staying at the hospital for a while, the friend returned home, but before leaving she recalled to the invalid's mind the question of the money, stating that she had it, and that she did not know what to do with it. The invalid then said: "Give $300 to H., give $200 to L., and the balance to M., and $25.00 to you." *Held*, (1) that the delivery was as complete as the circumstances would permit; (2) that the question whether the deceased intended that the gift was to be absolute and inter vivos, or only to take effect in case of death, was for the jury.

Argued Oct. 21, 1902. Appeal, No. 151, Oct. T., 1902, by plaintiff, from judgment of C. P. Franklin Co., Feb. T., 1901, No. 83, for defendant non obstante veredicto in case of Mary Hawn v. Samuel M. Stoler, Executor of A. B. Stoler, Deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit to establish a donatio mortis causa. Before JOHN STEWART, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $326 subject to question of law reserved.

The court in an opinion by JOHN STEWART, P. J., entered a verdict for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*W. K. Sharpe*, of *Sharpe & Elder*, for appellant.—There was sufficient delivery under the circumstances: Devol v. Die, 123 Ind. 321 (24 N. E. Repr. 246) ; Shakleford v. Brown, 89 Mo. 546 ; Michener v. Dale, 23 Pa. 59 ; Sessions v. Mose-

ley, 58 Mass. 87; Brown v. Niethammer, 141 Pa. 114; Williams v. Fitch, 18 N. Y. 546; Crawford's App., 61 Pa. 52; Champney v. Blanchard, 39 N. Y. 111.

No particular form of words is necessary to give effect to a gift causa mortis. And all questions relating to the fact of delivery, as well as of the capacity in which the person who receives the thing holds it, are usually to be left to a jury: Jacques v. Fourthman, 137 Pa. 428.

*J. R. Ruthrauff,* with him *J. S. Omwake* and *W. U. Brewer,* for appellee.—A gift cannot be made by words in futuro or by words in præsenti unaccompanied by delivery: Campbell's Estate, 7 Pa. 100; Trough's Estate, 75 Pa. 115; Kidder v. Kidder, 33 Pa. 268; Hemphill's Estate, 180 Pa. 87; Walsh's Appeal, 122 Pa. 177; Wells v. Tucker, 3 Binn. 366; Nicholas v. Adams, 2 Wh. 17.

Something remained to be done by the donor, through her agent or bailee, before the gift was complete, and she might have declined further performance and resumed her own: Kern's Estate, 171 Pa. 55; Taylor's Estate, 154 Pa. 183; Appeal of Waynesburg College, 111 Pa. 130.

The title must pass out of the donor absolutely at the time of making the alleged gift, and at that time must vest in the donee. It must be such a title as the donee could assert against all the world including the donor herself, and it must be irrevocable: Campbell's Estate, 7 Pa. 100; Walsh's Appeal, 122 Pa. 177; 3 Pomeroy's Equity, sec. 1146; Thornton on Gifts, sec. 135.

We insist that there was no delivery in this case to the donee, or to anyone for her: Thornton on Gifts, sec. 216; Clapper v. Frederick, 199 Pa. 609; Zimmerman v. Streeper, 75 Pa. 147.

There were no facts whatever in dispute, either as to the donor's intention to give, or as to the character of the delivery, nor was the transmission of the possession from the donor to the donee ambiguous.

The burden is on the donee to show every fact necessary to constitute a valid gift, and no inferences can be permitted except such as are fairly deducible from the facts proven: Clapper v. Frederick, 199 Pa. 609; Walsh's App., 122 Pa. 177.

OPINION BY BEAVER, J., March 12, 1903:

Being in bad health, a widow, Mrs. Little, delivered to her friend, Mrs. Slentz, $595 in money. Sometime thereafter the invalid, accompanied by her friend, went to a hospital in Baltimore for treatment. Realizing the critical condition of her friend, and being about to leave for her home, Mrs. Slentz introducted the subject of the disposition of the money in her hands. What followed is summed up in the final testimony of Mrs. Slentz, as contained in the opinion of the trial judge on the motion for judgment for the defendant, non obstante veredicto. "Mrs. Slentz: I may go home this evening and we do not know what might happen, and you know I have that money. Mrs. Little: Yes, you know it goes very hard with me to speak. Mrs. Slentz: Yes, I know it does, but I have this money in my possession and don't know what to do with it. Mrs. Little: Give $300 to my sister Mrs. Hawn; give $200 to Laura Jacobs, and the balance to Mrs. Moore, and $25.00 to you."

The plaintiff claims that this was donatio mortis causa. The defendant admits that it was either that or nothing. Upon interrogation at the argument, it was distinctly admitted that if Mrs. Little had recovered, the money would have gone back to her. A verdict was taken, by direction of the trial judge, for the plaintiff and subject to the point reserved, namely, " Is there any evidence in the case to be submitted to the jury, upon which the plaintiff is entitled to recover? "

The point upon which the case was ruled against the plaintiff and against the verdict of the jury, seems to have been that the conversation between Mrs. Little and Mrs. Slentz was of such an uncertain and ambiguous character that a gift in prospect of death could not be inferred therefrom, the court saying : " We have said enough to show that plaintiff's case must fail, if for nothing else, because of the uncertainty and ambiguity of the transaction ; something else than a donatio causa mortis could be derived as well therefrom, and this is enough to resolve the case against her." Judgment was, therefore, entered upon the point reserved in favor of the defendant, non obstante.

Blackstone's definition of donatio mortis causa is recognized as containing all the elements of such a gift. He says (2 Black-

stone's Commentaries 514): " Besides these formal legacies, contained in a man's will and testament, there is also permitted another deathbed disposition of property, which is called a donatio causa mortis. And that is, when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered to another the possession of any personal goods (under which have been included bonds and bills drawn by the deceased upon his banker), to keep in case of his decease. This gift, if the donor dies, needs not the assent of his executor; yet it shall not prevail against creditors; and is accompanied with this implied trust that, if the donor lives, the property thereof shall revert to himself, being only given in contemplation of death, or mortis causa." Story, Spence and other writers have changed the phraseology of this definition, but all agree as to the essential conditions: 1. The subject of donatio mortis causa must be personal property. 2. The gift must be made by the donor in peril of death and to take effect only in case the giver dies. 3. There must be an actual delivery of the subject to or for the donee, in cases where such delivery can be made. See an exhaustive article upon the subject in 1 Bouvier's Law Dictionary, Rawle's Revision, 606, wherein the numerous authorities upon this subject are laboriously collected and briefly discussed.

Were the elements of donatio mortis causa present in the case under consideration? The subject of the gift was money. The gift itself was made in contemplation of death. Both parties to the transaction fully realized this and death almost immediately followed.

Two questions only are open for discussion: First. Was there a delivery such as the law requires? Second. Did the deceased have in mind or intend such a gift as is called in law donatio mortis causa?

It is to be remembered that the decedent had parted with the possession of the money involved, before she left home. Mrs. Slentz, to whom it had been given, had the possession which, if not immediate at the time of the conversation with her, was at least such as to give her the absolute control of it. If the decedent had in mind a gift such as is claimed in this case by the plaintiff, the amount directed by her to be retained by Mrs. Slentz was undoubtedly a good donatio mortis causa,

for it will be remembered that in the disposition of the money in the hands of Mrs. Slentz she gave $25.00 to her.   At the time the delivery was made to Mrs. Slentz, she, of course, held the money as trustee for Mrs. Little.   When the direction, of which Mrs. Slentz testifies, was made, there could, of course, be no delivery to her, because that had taken place previously, nor could Mrs. Slentz deliver the money to Mrs. Little to be redelivered to her, for it is clear that the money was in Waynesboro and the parties were in Baltimore.   It seems to us clear that the transaction amounted to this : The custodian of the money, being in effect trustee for her friend, Mrs. Little, became, by the direction of the latter, the trustee of those to whom the money was to be delivered, and for this we think there is authority in Crawford's Appeal, 61 Pa. 52.   The money which was the subject of the gift and the parties to whom it was made were at Waynesboro.   The delivery, therefore, was as complete as the circumstances would permit.   The law does not require impossibilities and, where the intention to make such a gift exists, such a delivery as was here made is all that is or ought to be required.   In practically analogous cases, the rigid rule which requires an actual delivery has been made to bend to meet the circumstances of the case, where the transaction is fair and no fraud is intended, and the facts warrant the inference of a constructive delivery.

2. The question which remains, therefore, and the only one, was, Did Mrs. Little intend, by the direction to her friend, Mrs. Slentz, a gift mortis causa?   If she did, the case is with the plaintiff.   There is force in the reasoning of the trial judge in his opinion on the point reserved upon this subject and, if the words upon which the gift depended had been in writing, it would have been his duty to rule as to their meaning as a question of law.   Inasmuch, however, as they were oral, it was just as much his duty to direct the jury to determine from them what the intention of the person using them was.   If we were to import into the language used by Mrs. Little the conditions implied in the language of Mrs. Slentz, the result would have been doubtful.   Mrs. Little's words were : " Give $300 to my sister, Mrs. Hawn ; give $200 to Laura Jacobs, and the balance to Mrs. Moore, and $25.00 to you."   This, in answer to the statement of Mrs. Slentz : "I have this money in my possession and

don't know what to do with it." Did Mrs. Little mean that the gift was to be absolute and inter vivos? Did she mean that the money was to be given only in case of her death? Or did she mean, as claimed by the plaintiff, that it was to be given to the parties mentioned to be retained by them in case of her death, and to be returned in case of her recovery? The question of her intention was clearly for the jury. In this connection the language of the Supreme Court, in Jacques v. Fourthman, 137 Pa. 428, a case relating to a gift inter vivos, is appropriate: "The whole of this testimony is verbal. It relates to acts and declarations of the decedent with reference to' certain notes which it is claimed are the notes for the proceeds of which in the hands of the defendant this suit is brought. The question at issue is a question of fact, exclusively for the jury. The meaning of the words used by the decedent is for the jury and not for the court. What did the decedent mean when he said, 'Julia, where are those notes I gave you?' Did he mean that he had given them to the plaintiff? Certainly, the court can not say as a matter of law, that he did not. The word used was entirely appropriate to express the fact of a gift. The actual meaning of the declarant must be determined by the jury and, if they decided that a gift was meant, could they not lawfully do so? Would such a meaning be an absolutely illegitimate inference? We cannot say so."

The question of the province of the jury in determining the meaning of oral declarations is fully discussed by Mr. Chief Justice Gibson, in McFarland v. Newman, 9 Watts, 55, in which it is said: "The converse (that the construction of written evidence is with the court) was asserted in Sidwell v. Evans, 1 P. & W. 383, where it was ruled that a judge. cannot be required to give a legal construction to the words of a witness. That the construction of an oral agreement belongs to the jury, and that parol evidence connected with a writing draws the whole from the court is so often repeated in our own reports that I forbear to enumerate cases; and I particularly advert only to Harper v. Kean, 11 Serg. & Rawle, 280, in which the expression of an opinion on the meaning of letters in connection with verbal communications was held not to be erroneous, only because the jury were directed to judge of the contract for themselves." This and other cases were referred to in Maynes

v. Atwater, 88 Pa. 496, in which Mr. Justice TRUNKEY says: " The sense of words used in connection with what the parties intended to express by them is exclusively for the jury to determine. The judge may not put a legal interpretation on oral words and make it a matter of positive direction. It is the province of the court to expound the meaning of an instrument, but not of words uttered, of which there can be no tenor." This has been followed in numerous later decisions which need not be enumerated.

The meaning of the words used by Mrs. Little and her intention to be gathered from them " being exclusively for the jury," we think there was error in entering judgment for the defendant, non obstante.

The defendant, at the argument, requested us, in case of a reversal, to preserve his right to an appeal upon exceptions taken in the course of the trial in the court below. For this reason, in view of the fact that it is now too late for the defendant to take an appeal, if judgment were entered by us upon the verdict, we follow the precedent established by the Supreme Court in Hughes v. Miller, 192 Pa. 365, and reverse the judgment and remit the record to the court below, with directions to enter such judgment in accordance with this opinion as law and right may require.