Dower. Pleas, ne unques accouple in loyal matrimonie, and touts terns prist.
The plaintiff lived in Great Britain, and to prove that she was intitled as the widow of Edmund Winder, Mr. Sergeant her counsel, produced a copy of the parish register by the vicar, certifying her marriage with Edmund Winder on the nth May 1727, at a place called “ Goosenargh, ” in Uanca-shire, in Great Britain, which was proved by a witness in court to have been compared with the original entry. To *152 prove the identity of the said Edmund, and that he was the person who had died seized of the house in question, the ex parte affidavit of one Thomas Fisher, now living in Lancashire aforesaid (whose sister was the-said Edmund’s first wife) was produced, shewing that he was present at his second marriage with the plaintiff, when he left England, and that he had corresponded with him since his arrival in Philadelphia in 1732, and these letters were produced in court, and proved to be his hand writing. This affidavit was objected to by Messrs. Rawle and Coxe pro def. as not being legal evidence of the identity, though it might be of marriage or pedigree, on the ground of necessity. But the court ruled that it was a good and legal evidence of the identity so far as it respected the marriage and pedigree, and was strictly within the reason, why such evidence was proper in the case of pedigree. They said, the same point had been determined at Lancaster, May assizes 1787, in the case of Fockler’s lessee v. Simpson.
Several letters from the said Edmund Winder to the said Thomas Fisher, from 1761 to 1778, were read in evidence, which stiled the plaintiff his sister, and complained that impertinent inquiries were made concerning him by the seamen of the ships coming from Europe, and threatening to remove to more distant parts in case such inquiries were persisted in.
The defendant’s counsel insisted, that the plaintiff could not be entitled as the wife of the said Edmund Winder, and produced a number of letters found in the chest of the deceased, from the said Thomas Fisher, the plaintiff, the: mother of the said Edmund, and others of his relations in England, wherein no mention is made of his having a wife in Lancashire, the said Fisher calling the plaintiff “sister Letty.” They proved that he had married a wife in New Jersey, and cohabited with her twenty-five years, and that they were considered in the neigh*boxirhood as man r*-tco and wife. By his will dated 15th July 1778, he gives L all his property to his friends in America, without taking any notice whatever of his having a wife or child in England. Some original memorandum books in the hand writing of the said Edmund Winder were also shewn, wherein his birth, the time of his arrival in Philadelphia, his last marriage, the death of his last wife, and several other events were noted down; and a number of entries were also made, as the heads of a will, &c. which could not be explained, unless on the grounds of his being married to a second wife in England, having had a daughter by her, and leaving them and his friends on some disgust. The whole transactions wore the appearance of great mystery.
The defendant’s counsel contended, that if the jury should be satisfied that the plaintiff was the widow of the said Ed *153 mund Winder, they could only find damages for her from the time of her instituting the suit, under the plea of touts terns prist, and cited 2 Bac. Abr. 149. Co. Eit. 32, and Gilb. on Dower 375.
Referred to in 5 S. & R., 292, -where Tiughman, C. J., said: “As to the case of Winder v. Little, 1 Yeates, 152, although the point on which the court decided is not expressly stated, yet enough appears to satisfy me, that it was a question on improvements.”
The chief justice gave the charge of the court to the jury to the following effect:
The plaintiff has produced positive proof of her intermarriage with Edmund Winder deceased, who died seized of the house in question. The affidavit of Thomas Eisher (brother of the first wife of the said Edmund) besides strengthening the proof of the second marriage in England, ascertains the identity of the demandant and her late husband, and that he received several letters from him in the course of their correspondence, which are now produced and proved to be the said Edmund’s hand writing. The letters produced by the plaintiff’s counsel, and above all the entries made in the original memorandum books of the deceased, throw considerable light 011 the business. Yet after all it must be confessed, that some doubts must arise from the letters shewn by the defendant from the deceased’s friends in Lancashire, from his marriage in New Jersey, and his last will. His arrival in Philadelphia was near sixty years ago, and it must necessarily be supposed that much darkness and obscurity must attend transactions of that period of time. These doubts however, do not, in our idea, countervail the positive clear proof adduced for the plaintiff, but the jury must weigh the whole, and decide 011 the matter of fact under all its circumstances.
If the jury concur with the court in opinion, they will find a verdict for the demandant, and assess damages at one-third *154] Part * °f tl-ie net profits of the house since the time of -* demand made, deducting the improvements, repairs, and taxes. This demand may be either in pais or by matter of record, as the commencing "of an action, and the demand here appears to have been made in 1786.
The house must be estimated as it was at the time of the testator’s, death, and any improvements made, or monies laid out since by the devisee, must not be taken into consideration. Where a husband sells lands to which he is entitled during his intermarriage, without his wife’s joining in the conveyance, the rents and profits of the property must be estimated as they were at the time of the transfer, because the purchaser is not liable on any principle of law or equity to pay the widow for his own improvements. (Hargr. Co. Ritt. 32. a. Hughes on Original Writs 196. Perk. § 328. 2 Bac. Abr. 129.)
Verdict for the demandant, with 69I. damages.