## Seaton *against* Jamison.

The demandant in an action of dower *unde nihil habet* is entitled to recover damages from the tenant of the freehold for the time being, to be estimated from the time of the death of her husband, where he died seised, although the defendant may have been tenant but a short part of the time.

ERROR to the common pleas of *Westmoreland* county.

Elizabeth Jamison against James Seaton, Ephraim Robinson and Andrew Galbraith.

This was an action of dower *unde nihil habet,* brought by the defendant in error against the plaintiffs in error.

William Jamison, the husband of the said Elizabeth, died seised of the land in question before the year 1800. His son Thomas Jamison entered on the land, and on the 13th of June 1816 sold and conveyed to Hugh Deever. Hugh Deever entered, and on the 31st of January 1818 sold to Alexander Seaton; who entered and remained in possession and resided on the land until the 7th of

[Seaton v. Jamison.]

March 1822, when he died, having by his last will devised the same to Thomas Seaton, who entered into possession and resided thereon until his death on the 21st day of July 1831, when James Seaton entered and holds as tenant in fee.

This action of dower was brought to May term 1834. The pleas are, *ne unques seizie que dower,* with leave, &c.

On the 22d of February 1838, judgment was confessed by the attorney for the defendants in the action of dower, that the plaintiff should have her dower ; and it was also agreed, for the purpose of ascertaining the damages, that the matter should be referred to three men, on whose report, or that of a majority, judgment to be entered by the court.

The arbitrators, on the 1st of June 1838, awarded for the plaintiff the sum of 723 dollars 91 cents damages.

On the same day exceptions were filed, praying that the award should be set aside, stating the facts of death, sale, devise and entry, as above, and setting forth, that the arbitrators had allowed damages from the year 1819 against the plaintiffs in error. This was sworn to by one of the arbitrators, and a rule granted to show cause why the report should not be set aside for the reasons filed.

On the 27th of August 1838, the attorneys for the parties agreed in writing, and which is filed, that the facts stated in the exceptions are true, that the times of alienation, death of the parties and assessment of damages are as stated, and were so acted on by the arbitrators, and that the same be considered as found by special verdict, and shall be subject to revision on a writ of error.

Judgment was given on the award in favour of the plaintiff, Mrs Jamison.

The errors assigned are, that damages are given against the plaintiffs in error for the times of occupancy by persons who are long since dead.

Damages are assessed against persons not tenants of the fee, nor having any interest.

*Alexander,* for plaintiff in error, cited, 1 *Lev.* 38; *Rob. Dig.* 181; *Say. Dam.* 28; 3 *Lev.* 275; 1 *Salk.* 252; 1 *Shaw* 97.

*D. H. Foster* and *Coulter,* contra, cited, *Co. Lit.* 32, *b.* 33, *a* ; *Bull. N. P.* 116; 6 *Johns. Rep.* 290; 7 *Johns. Rep.* 247; 9 *Serg. & Rawle* 368.

The opinion of the Court was delivered by

KENNEDY, J.—Two errors have been assigned : the first, that damages have been assessed and allowed against the plaintiffs in error, who were the defendants below, including the annual value or profits of the land during the occupancy of former tenants long since dead.

At common law damages were not recoverable by the widow in an

[Seaton v. Jamison.]

action brought for the recovery of her dowry : she recovered merely one-third of the land whereof her husband died seised, which was laid off to her by metes and bounds.　The delay attending the recovery frequently occasioned great injury and loss to her ; deprived her indeed of the very means allowed her by law for her subsistence : to remedy which the statute of Merton, 20 Hen. 3, c. 1, was passed, providing that she should recover damages in her suit of dower from the *time of the death of her husband,* where he died seised ; and if not, then from the time of demand.　1 *Inst.* 32, *b.*　Then came the statute of Gloucester, 6 Edw. 1, c. 1, sec. 2, which allowed her costs in addition where she was entitled to recover damages.　These damages, according to Sir Edward Coke, 1 *Inst.* 33, *a.,* can only be recovered against the tenant for the time being of the land ; and he is liable to pay in damages, to the demandant in the action, the annual value or mesne profits thereof, not only for the time he shall have been tenant himself and received the same, but likewise for the whole time that shall have elapsed from the death of the husband ; though he may have been tenant and received the profits but for a very short portion of the whole interval : and the death or life of any of the previous tenants at the time of recovery can make no difference, nor affect the extent of her right to recover, as none of them, even if living, is or can be made party to the action.　In support of this doctrine lord Coke cites the record of the case of Belfield *v.* Rowse, reported also in *Moore* 80 and *Bendl.* 153.　The tenant there, as to parcel of the land, pleaded non-tenure, and for the residue, detainer of charters or muniments of title ; upon which pleas they joined issue and went to trial : both issues were found by the jury against the tenant ; and they found further that the husband died seised such a day and year, and had issue one son ; that the demandant and son for six years together, after the decease of the husband, took the profits of the land ; that the son after that on such a day and year *died* without issue, *after whose decease* the land descended to the tenant (the defendant in the suit) as uncle and heir to him, by force whereof he entered and took the profits until the purchasing of the original writ, and also the value of the land by the year, and assessed damages for the detention of the dower and costs ; and upon this verdict, after debating, the demandant had judgment to recover her damages for *all* the time *from the death of her husband, without any defalcation.*　This case seems to meet fully the objection raised here by the counsel for the plaintiffs in error in the first error assigned.　And if there be any perceptible difference between the two cases it would appear to be in favour of the defendant here, who seems never directly nor indirectly to have participated in the profits of the land after the death of her husband ; whereas in Belfield *v.* Rowse she, with the son, received the profits of the land for the space of six years before the defendant came into the possession of the land and receipt of the profits.　This difference, however, as I conceive, between the two cases, is rather apparent than real, because

[Seaton v. Jamison.]

the widow was considered as having received the profits which came into her hands from the land, during the six years, entirely for the use of the son, and that she was accountable to him for them; for, until dower was assigned to or recovered by her, she had no claim thereto; consequently the holding and occupying of the land by her during the six years was to be regarded in law as that of the son; see *Hargrave's note, 3 Co. Litt. 33, a.*; and the uncle, who succeeded the son in the tenancy of the land, was held liable to the widow for the annual value or profits of it during the son's time, notwithstanding his death, as well as that of his own time. It is only against the tenant of the land, at the time of suing out the original writ of *unde nihil habet,* that the demandant can recover either the one-third of the land or the one-third of the annual profits thereof from the time of the death of her husband: she cannot go against any of those who held the land previously and received the profits, though it were subsequent to the death of her husband. Seeing, then, that the tenant of the land at the time of commencing the action is the only person against whom it can be maintained for any purpose, the provision of the statute of Merton in favour of the widow, which expressly gives her the right to recover the one-third of the annual value or profits of the land *from the time of the death of her husband,* where he died seised, beside damages for the illegal detention of her dower, would in many cases be defeated and rendered unavailing if the only party against whom the action can be maintained is not in all cases to be held answerable for them. *Park on Dower* 307, 308, from the authorities referred to in the margin of his work, lays it down, that " upon damages being adjudged they shall be recovered against the *tenant to the writ in toto,* notwithstanding there may have been *several* in the receipt of the profits *successively* since the death of the husband, and *not* against *every* one for *his time,* as in cases of disseisin, for the statute of Gloucester does not extend to this case." Beside the authorities mentioned above in support of this principle, he refers to 1 *Keb.* 86, *marg.;* 1 *Roll. Abr.* 679, cited *Co. Litt.* 33, *a.*; and Brown *v.* Smith, *Bull. N. P.* 117, which seem to sustain him completely. To which may be superadded, Hichcock *v.* Harrington, 6 *Johns. Rep.* 290, and the opinion of the late Mr Justice Duncan in Lyle *v.* Richards, 9 *Serg. & Rawle* 368.

The authorities cited on the argument by the counsel for the plaintiffs in error are indisputably good law, and the principle established by them has been so long received that it cannot now be controverted as a general rule of the common law; but they are not applicable to this case, because it is neither the demandant nor the defendant in the writ here that is dead, as in the cases cited by the counsel for the plaintiffs in error. If the plaintiffs in error or the demandant had died even as late as after the confession of the judgment and before the assessment of the damages by the arbitrators, then the rule established by those cases, *actio personalis quæ oritur ex delicto moritur cum persona,* might have had some bearing, so as at

[Seaton v. Jamison.]

least to have reduced the amount of damages, if not to have prevented the recovery of them altogether. For if it were to be held in such case, according to the principle of the decision in Curtis *v.* Curtis, 2 *Bro. Ch. Cas.* 620, that a recovery of the damages might be had, upon equitable principles, against the personal representatives of the deceased defendants, or against the defendants themselves, in favour of the personal representatives of the deceased demandant, it may be that the time during which the plaintiffs in error actually held and received the profits of the land would be all that they would be held accountable for. And as we have no court of chancery in this state, I will not say that a writ of *scire facias* upon such judgment might not be sustained in order to accomplish the object just suggested. The authorities, however, cited for the plaintiffs in error only go to establish, that if the tenant to the writ or the demandant therein die, after judgment for one-third of the land and before judgment for the damages, that the claim for damages becomes thereby extinct according to the rule of the common law, *actio personalis quæ oritur ex delicto moritur cum persona.* But in this case both the demandant and the defendants are still in full life, so that the rule cannot be applied, and from its very nature cannot be extended to a case of the death of any other than the party seeking to recover or the party against whom the recovery is demanded. By a reference to the following authorities this will appear abundantly clear. Aleway *v.* Roberts, 1 *Keb.* 85, 171, 646, 711; 1 *Sid.* 188; 1 *Lev.* 38; Mordant *v.* Thorald, *Salk.* 252; S. C., *Carth.* 133; 1 *Show.* 97; 3 *Mod.* 281; 2 *Lev.* 275; *Ca. temp. Holt* 305; Curtis *v.* Curtis, 2 *Bro. Ch. Cas.* 629, 632; Wakefield *v.* Child, *Fonblanque's Notes to Treatise on Equity* 147. Nor can any argument be raised in favour of the tenant, founded upon any application that may be made of this rule, which will go to affect any right that he can have to be indemnified or reimbursed by prior tenants, either for his loss of one-third of the land or the damages which he may have to pay; because, if he has any such right, it must be founded upon a contract of warranty or indemnity, and consequently the rule cannot interfere with his right to recover thereon, whether such prior tenants be dead or alive.

The second error is, that the damages have been assessed "against persons not tenants of the fee, nor having any interest." It is not requisite, however, that the persons against whom the writ of dower, *unde nihil habet,* is sued out should be tenants of the fee; if they be tenants of the freehold it is sufficient. *F. N. B.* 148, *A.* It cannot be maintained against a guardian in sockage; 29 *Ass.* 68; *Bro. Dow.* 11; or any person who has but a chattel interest, as tenant by *elegit,* statute staple, statute merchant or tenant for term of years; 9 *Co.* 17; *Perk. sec.* 404; *Co. Lit.* 35, *a.*; 6 *Co.* 58; 19 *Ass.* 68; Miller *v.* Beverly, 1 *Hen. & Mund.* 38. But it may be maintained against a person having the freehold, either by right or wrong; such as a disseisor, abator, intruder, &c. So an assignment of dower made by any of those persons, without collusion with the widow, *according to*

VII.—2 v

*common right*, will be good and binding upon the persons having right. *Co. Lit.* 35, *a.*, 357, *b.*; 2 *Co.* 67; 6 *Co.* 58; *Perk. sec.* 394, 404. The sufficiency, then, of all that is contained in this error to defeat the demandant's right to maintain her writ, had it even been alleged at a proper stage of the cause in the form it is, might perhaps be questionable; for it is not said that they do not *hold* the land or any part of it, but merely that they are not tenants of the fee, and have no interest. If this latter expression was intended to mean *no right*, as I am inclined to think it was, the defendants perhaps, notwithstanding, might be intruders, holding the land, or some part of it, against those who had the right to it; and if so, the demandant would be entitled to have her writ against them. But this was intended, I take it, to meet the state of facts agreed to in the court below by the counsel for the demandant, in order to have their legal effect, upon her right to recover, determined, the same as if they had been found by an inquest under a writ of inquiry of damages awarded upon the judgment confessed, which writ might have been awarded had not the necessity of it been superseded by a reference of the matter under the agreement of the parties, or their counsel, to arbitrators. Kent *v.* Kent, 2 *Barnes* 442; *Co. Litt.* 32, *b.*, note by *Harg.* (4). See also 2 *Towns. Judg.* 100, 101, 102, *pl.* 22, 23, 24. By these authorities it will appear that the common practice has been to sue out a writ of inquiry of damages, in order to have the damages given by the statute of Merton assessed either upon a judgment by default, by confession, or on verdict, where the jury have omitted to assess them. In the present case the defendants, after appearing to the suit, pleaded in bar by joining and putting in the plea *ne unques seisie que dower*; some time after which they confessed judgment generally. This being the state of the cause when the reference took place, it is reasonable to conclude that the arbitrators were chosen to supply the place of an inquest which the demandant was entitled to for the purpose of inquiring into and assessing the damages. Upon the judgment confessed, which was a judgment of seisin, she might have sued out a writ of *habere facias seisinam*; because, by it, her right to have seisin of one-third of the land was finally and conclusively established. A writ of error would have lien upon it, either before or after the execution of a writ of inquiry of damages and the judgment of the court thereon confirming the assessment of damages; and in case of a writ of error being purchased in the latter instance, the first judgment, upon the ground of its being perfect and distinct from the second, might therefore be affirmed, if regular, though the second might have to be reversed, if not released. Butler *v.* Ayne, 1 *Lео.* 92; *Co. Litt.* 32, *Harg. note* (4) cites 22 *Ed.* 4, 46. See also 2 *Lord Raym.* 1385, *arguendo.* The agreement in regard to the facts of the case is somewhat singular; and why the counsel for the demandant should have consented that they should be considered as found by a *special verdict*, and be subject to revision on a writ of error, is perhaps rather unaccountable. To regard the facts agreed to as

[Seaton v. Jamison.]

a *special verdict* in its utmost latitude of meaning might possibly have the effect of setting aside the judgment by confession altogether, which it is difficult to believe could have been intended by the counsel for the demandant. The agreement in terms certainly does not say that the judgment is to be considered as set aside, or that it is to be deprived of its force or effect in any respect whatever; and it seems utterly incredible that counsel should have agreed to put the right of his client in jeopardy, if not to concede it away entirely, after it had been incontrovertibly established. An agreement setting aside the judgment would also in effect have set aside the report of the arbitrators; because, without the judgment of seisin, the report of the arbitrators assessing the damages would have been unavailing, as the right to recover damages depended upon the right to recover seisin being first established. Under this view of the case, the most that could have been intended by the parties was, that the facts agreed to should be considered as if they had been specially found by a jury of inquiry.

Among the facts agreed on, it is stated that James Seaton, one of the defendants below, entered into the land on the 21st day of July 1831, and holds as tenant in fee, without saying any thing as to the other two defendants. If it were necessary to reconcile what is here predicated of James Seaton with the legal liability of the other two defendants, in order to support the proceedings in the court below, for aught that appears to the contrary, Robinson and Galbraith, the other defendants, may be considered joint tenants for their lives, that is, tenants of the freehold, which is enough to render them liable to the demandant, with Seaton, who has the fee vested in him. *Litt.*, sec. 285, *Hargrave's note* (2); *Co. Litt.* 184, *b*. That they were joint tenants of the freehold was admitted by them, in the first place by their jointly pleading to the writ *ne unques seisie que dower*, in bar of the demandant's right to recover at all; and afterwards, most conclusively, by their confession of judgment, acknowledging the demandant's right to recover seisin of one-third of the land. Thus they precluded themselves from alleging or showing afterwards that they were not tenants of the freehold. If it were true that they were, neither rightfully or wrongfully, tenants of the freehold at the impetration or service of the original writ, and it was meant to be relied on as a defence, it ought to have been pleaded, at the earliest opportunity afforded, in abatement. Non tenure would have been the appropriate plea, which, according to all the authorities and precedents on the subject, must be pleaded in abatement, and therefore pleaded without delay. So that where the action is against several, after wager of law, one cannot take the *entire* tenancy upon himself; *Th. Dig. cap.* 14, *sec.* 25; *Com. Dig., tit. Abatement (I.* 26); which it would seem Seaton wishes to do here, after having first pleaded in bar to the action, and afterwards confessed judgment. The defendant admits himself tenant by even waging his law of non summons, and therefore cannot plead non tenure afterwards. 1 *Leo.* 92; *Com. Dig., tit. Abatement (I.* 26). But how much stronger and more di-

[Seaton v. Jamison.]

rect is his admission to this effect where he confesses judgment. That non tenure may be pleaded, either to the whole or a part of the demand, and must be pleaded in abatement, will be seen by a reference to the following books. *Rast. Ent.* 231, *a, b ; Ibid.* 232, *b* ; 1 *Bro. Ent.* 205; *Clift's Ent.* 303, *pl.* 11; 1 *Lutw.* 716, 717; Mitchel *v.* Hyde, 1 *Leo.* 92; *Dal.* 100 ; Belfield *v.* Rous, *Mo.* 80. We therefore think that even if the facts agreed on necessarily showed a non tenure upon the part of Robinson and Galbraith, it was not competent for them to avail themselves of such defence, after having pleaded *ne unques seisie que dower*, and certainly much less after having confessed judgment of seisin.

Judgment affirmed.