## SUPREME COURT OF PENNSYLVANIA.

### BONBAKER v. OKESON.

1. Nothing short of an agreement to give time, which binds the creditor,and prevents his bringing suit, will discharge a surety.
2. Such an agreement cannot be inferred from declarations, made by a creditor to a surety, to the effect that he considered the debtor possessed of property sufficient to discharge the liability, that he either had given or would give him time, that the debtor would pay the debt, and that he did not want the surety any longer.
3. The duty of determining the meaning of words used in conversation, and what the parties intended to express by them, devolves upon the jury and not upon the court.

Error to Common Pleas of Juniata county.

STRONG, J.—The original liability of Okeson to pay the debt was established, and, indeed, it was not denied. It was, therefore, incumbent upon him to show affirmatively his discharge from liability. This he attempted to do by evidence that he was surety, and that the creditor had told him on one occasion that Shirlock,the principal debtor,was good enough for the money; that he did not want him (Okeson); that he had been west to see Shirlock; that he had a good crop of wheat, a fine appearance for a good crop of corn, and a good stock of horses and cattle on his farm; that he had given him time, or would give him time, and that Shirlock would pay it, and that he did not want Okeson any longer.

The court charged the jury, that "if this conversation occurred, and it was all the conversation that occurred between the parties, and Okeson was the surety of Shirlock, it would discharge Okeson, and be an available defense on the ground that it would lull the surety into security, and prevent him from taking any action for his own security or indemnity; and it would be a fraud upon the surety for the creditor afterwards, contrary to his assurance, to call upon the surety for payment." To this instruction the plaintiff excepted, and he has assigned it here for error.

It is noticeable that the learned judge did not submit

to the jury to find what the plaintiff intended, or what the defendant understood by the expressions, he had "given time" to Shirlock, and that "he did not want Okeson any longer." The court construed the language of the witness, and took away from the jury all inquiry as to its meaning. The rule, however, is undoubted, that the meaning of the words used in conversation, and what the parties intended to express by them, is exclusively for the jury to determine: 9 Watts, 59. It is obvious that the testimony is utterly inadequate to prove a direct and binding release of the surety. The creditor said "he did not want Okeson any longer," but this did not amount to an agreement to discharge him, and if it did, it was entirely without consideration, and therefore inoperative. Nor does the expression of the creditor, that he had given time to the principal debtor, necessarily amount to proof of an equitable release of the surety. It was quite possible for him to give time without affecting in the least the liability of Okeson. Nothing short of an agreement which binds the creditor and prevents his bringing suit, will discharge the surety. Mere delay, without such binding agreement, will not. Now, if such an agreement may be inferred from a simple declaration of the creditor, that he had given time (which we do not admit), it is not to be inferred by the court as *presumtio juris et de jure.* Whether the jury were at liberty to draw such an inference need not now be considered. How they could, certainly is not manifest; for giving time, and a contract to give time, are distinct and independent things. Proof of the existence of a subject matter, about which a contract may be made, would seem to have no tendency to prove that one, in fact, had been made. Indeed, the learned judge of the Common Pleas does not seem to have rested the defendant's case upon either of these grounds. His view was that the defendant was discharged, because the language of the plaintiff, alleged to have been proved, would lull him into security, and prevent his taking any action for his own indemnity, and because it would be a fraud upon the surety for the plaintiff afterwards to call upon him for payment. The simple meaning of this is,

that the plaintiff was estopped, not by matter of record or by deed, but by matter in *pais*. The objection to it is, that there was nothing in the evidence to warrant the conclusions that the defendant had been injured by the declarations of the plaintiff, or that he was in any worse condition than he would have been in had those declarations never been made. Certainly, it was not for the court to say, as a matter of law, that he had been injured. But is it essential to an equitable estoppel by matter in *pais*, that he who sets it up should show that he has been misled or hurt: Dezell v. Odell, 3 Hill, 215; Patterson v. Little 1 Jones, 53; Hill v. Epley, 7 Casey, 334. It never yet has been held that a declaration of the creditor, that the principal debtor was good enough, that the surety was in no danger, and that the debt would be collected from the principal, without more, was sufficient to estop the creditor from proceeding against the surety. Such declarations are exceedingly common. They are often made to induce the surety to go into the contract, and they are repeated afterwards without any design to mislead, or without being understood as a waiver of any rights. They are made and received as expressions of opinion. They neither invite confidence, nor is confidence often reposed in them. Standing alone, they will not discharge the surety. Bank v. Klingensmith, 7 Watts, 533, does not sustain the charge of the court in this case. There the creditor held a judgment against the principal and surety. The surety called upon the creditor, requested that an execution might be issued to seize the principal's property, about being removed. He stated that he wished to be released, and that the principal had property sufficient within reach of an execution to pay the debt. The creditor refused compliance, stated that the principal was good enough, and that he would give the defendant clear of his endorsement. No execution was issued. There is no similarity between that case and the present. There the surety was in motion to secure himself. He had a right to insist that execution should be issued, and he did insist. There was proof of actual injury in withholding

the execution, an execution to which the surety was entitled on his request, and the case was put upon the ground, both in the court below and in this court, that he had sustained injury, not from the declaration of the creditor, but from the withholding of the execution. The case of Harris v. Brooks, 21 Pick. 196, relied upon by the defendant in error, is not unlike Bank v. Klingensmith. There the surety was also in motion. He called upon the creditor, stated that if he had to pay the debt, he wished to attend to it soon, as he then could get security of the principal. The creditor assured him that he (the creditor) would look to the principal for payment, and that he (the surety) need not give himself any trouble about the note, for he should not be injured. The case was put to the jury with the instruction, that if in consequence of this assurance of the creditor the surety omitted to take up the note, and secure himself out of the property of the principal debtor, he was discharged. The defense, therefore, as in Bank v. Klingensmith, rested not on the declaration of the creditor alone, but on them and superadded evidence that there had been actual harm resulting from them to the defendant. This essential to estoppel *in pais* was, therefore, not wanting, as it is in the present case. The language of Chief Justice Shaw is to be understood as applicable to the case he then had in hand, a case in which the jury had found that injury had resulted from the declarations of the creditor, and the only question, therefore, was, whether they were such as to warrant his relying upon them, and guiding his actions by them. Surely, without having been the occasion of injury to the defendant, the creditor can not be guilty of a fraud upon him by calling upon him to pay a debt which he has promised to pay, and no declaration which has not, in fact, influenced his conduct, can have done the surety any harm. In losing sight of this, consists the error of the charge, and for this reason, pointed out in both of the assignments of error, the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.

## The Undertakers and Physicians.

*Judge Pearson Decides That They Cannot be Paid out of a
Decedent's Encumbered Real Estate.*

In settling up the estate of Daniel Hocker, deceased, a
resident of Harrisburg his executors filed their account at
the last session of Orphans' Court, in which they took
credit for the payment of funeral expenses and medical
attendance during his last illness, which amounted to
about $140. The balance exhibited by the administra-
tors was the proceeds of the sale of real estate belonging
to deceased, sold under an order from the Orphans'
Court, The liens against the real estate were more than
sufficient to absorb the whole balance. ˙Exceptions were
filed to this item of the account relating to funeral ex-
penses and medical attendance, by the counsel for the
judgment creditors, and the question was argued, H. M.
Graydon, Esq., appearing for the administrators, and Ovid
F. Johnson, Esq., for the judgment creditors. Judge
Pearson filed an opinion in which he decides
that the preference given by the act of 1843 to the pay-
ment of funeral expenses and medical attendance during
last illness applies only to personal estate if the real estate
be encumbered, and that such debts have not a preference
over liens of record, In this case the court struck out
the item of funeral and medical expenses, because the
real estate was encumbered, and when sold the whole
amount would have to be paid to lien creditors.

This decision is of importance to undertakers and med-
ical men, inasmuch as their services cannot be paid for
out of the proceeds of a deceased person's real estate if
the latter be encumbered by mortgages or judgments suf-
ficient to cover its full value and if the dead person is not
possessed of personal property. This point has never been
distinctly decided by the Supreme Court, though some of
their decisions tend to that direction. Judge Smyser, of
the Court of Common Pleas of Bucks county, some years
ago decided the question the same way as Judge Pearson.

## CRIMINAL LAW.

*Enticing Away for Purposes of Prostitution.* A statute provided that "Whoever entices or takes away any unmarried female of a chaste life and conversation from the parents' home, or wherever she may be found, for the purpose of prostitution or concubinage, and whoever aids and assists in such abduction for such purpose, shall be imprisoned in the penitentiary not less than one nor more than ten years." *Held*, that to constitute an offense under the statute it is not necessary that she be taken to a great distance, nor be kept permanently away, but the crime is committed if she is taken away a sufficient distance and kept away a sufficient time to accomplish the purpose of prostitution. Bishop's Stat. Crimes, 637; Regina v. Baillie. 8 Cox's C. C. 238; Regina v. Timmins, id. 401. It is sufficient, that a girl living with her parents is induced by persuasion or enticements to go to some convenient place away from her father's home, but in the immediate neighborhood for the purpose of prostitution, when she is gone only for an hour or two at a time, she continuing all the while to dwell with the parents as usual. Illinois Sup. Ct., Jan., 1879. *Slocum* v. *The People.* Opinion by Baker, J.

*Verdict on Particular Count—Acquittal on Others, Etc.*—A verdict, finding the defendants guilty on a particular count of the indictment, operates an acquittal on the other counts. Sup. Ct., Ala., Dec., 1878. *Walker v. State.* Opinion by Stone, J.

—-N*ol. Pros. as to One Count—Twice in Jeopardy.*—An entry of *nolle pros.* as to one of several counts of an indictment, before the defendant is put in jeopardy by the impanelling and swearing of the jury for his trial, does not affect his acquittal on the count, but merely destroys that count, leaving the indictment to stand as though the count had never been in it. Ib.