## Bridgeford v. Groh et ux.

*Hugh Roberts,* for plaintiff.

*Allen Hunter White* and *Rowland C. Evans, Jr.,* for defendants.

STERN, P. J., July 16, 1930.—

(1) *The defendants' motions for new trial and for judgment n. o. v.*

These motions may be considered together. They are based upon two contentions of defendants. The first of such contentions is that the court erred in not admitting in evidence testimony to the effect that at the settlement at which the property was purchased by John J. Bridgeford from Mary McClue Douglass, the purchaser deposited $80.36 in excess of the amount required to complete the settlement, and that the title company where the settlement was conducted paid this amount by a check to the order of Helen C. Bridgeford. The object of the offer was thereby to prove that Helen C. Bridgeford had put up the money for the settlement; in other words, that the property was being bought with her money and not with that of John J. Bridgeford. The trial judge ruled this testimony out on the ground that the mere fact that the check in question was made out by the title company to the order of Helen C. Bridgeford did not logically or relevantly prove that the purchase money had been put up by her or belonged to her. We do not know the circumstances under which the title company made out the check for this small amount to her order. It may have been by direction of John J. Bridgeford and intended by him as a gift to Helen C. Bridgeford, or it may have been merely that the latter asked the title company to make out the check to her order and they complied with that request.

The same criticism may be made of the other testimony offered by the defendants for the same purpose, and which was also rejected by the trial judge. The fact that Helen C. Bridgeford, a few months subsequent to the first transaction, took title to the adjoining property directly in her own name, the fact that when the properties were afterward sold Helen C. Bridgeford alone attended the settlement and received the check for the purchase money, the fact that John J. Bridgeford is alleged to have said to the defendants when they were negotiating for the purchase of the properties that Helen C. Bridgeford was the owner, are all irrelevant and inadmissible as tending to show that Helen C. Bridgeford had put up the money for the purchase of the properties. This is especially true because, after the property in question in the

present controversy was purchased, the title was transferred from John J. Bridgeford to Helen C. Bridgeford, and when, some two years later, the properties were sold to the defendants, it would have been natural for John J. Bridgeford to say that the properties belonged to Helen C. Bridgeford, and equally natural that she should have attended the settlement and received the purchase money, inasmuch as she was admittedly the owner at that time. As to her taking title to the adjoining property directly in her own name, this would throw no light on the question as to her own money being used in the purchase of the property involved in the present case; if anything, it would indicate a difference in the two transactions, since in the case of the property here involved the title was taken originally in the name of John J. Bridgeford and transferred by him to her.

The second contention of the defendants is that by the agreement entered into between the plaintiff and her husband, John J. Bridgeford, in January, 1924, the plaintiff released and discharged John J. Bridgeford of and from any and all claims she might have against him, and it is claimed that this amounted to a release of her dower rights. The trial judge overruled this contention for several reasons. First, because it is questionable, to say the least, whether a release of her "claims" against him would amount to or would involve a release of her dower rights in property which he had aliened, which rights could scarcely be said to be a "claim" against him; second, because the release was to be avoided if the sum of $9000 was not deposited by John J. Bridgeford within ninety days from the date of the agreement (subsequently extended to a period of sixty days from May 24, 1924), and there is no evidence that such deposit was ever made; and, third, because it would appear that the entire agreement was illegal and invalid, because the $9000 was to be deposited only if the plaintiff would proceed to obtain a divorce against John J. Bridgeford on or before Sept. 15, 1924—a provision clearly beyond the pale of the law.

For these reasons, therefore, the court *in banc*, upon consideration of the record and of argument had thereon, discharges the defendants' rule for a new trial and overrules the defendants' motion for judgment *n. o. v.*

(2) *The defendants' motion for judgment n. o. v. on point reserved.*

At the trial it was agreed between counsel that the verdict of the jury was to be merely as to whether or not the plaintiff was entitled to dower rights in the property, and that as to the form of the verdict and the *quantum* and nature of the right claimed by her the court should determine these matters as a question of law. The defendants' contentions in regard to these matters were set forth in the ninth point for charge presented by them, and the court accordingly reserved that point for further consideration.

The fact that the husband, John J. Bridgeford, held title only for an instant of time before conveying it to Helen C. Bridgeford obviously did not deprive the plaintiff of her dower rights, for, as said by Blackstone (Lewis's Edition, Book 2, page 594, * page 132) : "If the land abides in him [the husband] for the interval of but a single moment, it seems that the wife shall be endowed thereof," and this is illustrated by a quaint case in Wales, where a father and a son were hanged simultaneously, but the son was supposed to have survived the father by appearing to struggle longer, and, accordingly, it was held that he thereby became seised of an estate in fee by survivorship, in consequence of which seisin his widow obtained a verdict for her dower.

It is also established that in such a case as the present, where the husband aliened the land in his lifetime, the proper remedy for the wife to pursue is

that adopted by her in the present case, namely, an action of dower: Gourley v. Kinley, 66 Pa. 270; Stockdale's Estate, 29 Dist. R. 1013; Bridgeford v. Groh et ux., 9 D. & C. 5.

In order to determine the nature and extent of the plaintiff's dower right, to which the jury has found that she is entitled, it is first necessary to consider whether or not that right is to be determined in accordance with the provisions of the Intestate Act of June 7, 1917, § 3, P. L. 429, 434.

. That the act applies to the case is undoubted, because the conveyance of the property by John J. Bridgeford was subsequent to the passage of the act: Merrick v. Du Pont, 285 Pa. 368. The defendants claim, however, that the provision of section 3 which covers the present case, namely, that "her [the wife's] share in lands aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in lands of which the husband died seised," is unconstitutional, as not being included in the title of the act, namely: "An act relating to the descent and distribution of the real and personal property of persons dying intestate." It is argued by the defendants that where a husband aliens land in his lifetime he does not own it at the time of his death, and, therefore, when section 3 purports to state the extent of the wife's interest in such land, it is not dealing with property belonging to the intestate husband, but is regulating the extent of the wife's own interest or property.

With this contention of the defendants the court cannot agree. The point has not been decided, although the same question is suggested in Stockdale's Estate, *supra*, and there is a possible intimation bearing upon the subject in Merrick v. Du Pont, *supra*.

The title of the act is, as already stated, "An act relating to the descent and distribution of the real and personal property of persons dying intestate."

The provision of section 3 concerning the wife's share in lands aliened by her husband in his lifetime without her joining in the conveyance is one which fixes her dower right in such lands. Is such dower right one obtained by descent? According to Blackstone (Lewis's Edition, Book 2, page 667, * page 201), there are two methods of acquiring title to real estate: *"descent,* where the title is vested in a man by the single operation of law; and *purchase,* where the title is vested in him by his own act or agreement." It is obvious from these classic definitions that an estate of dower is a title gained by descent, because it accrues "by the single operation of law." Indeed, the commentator to the text states in a note thereon that "Titles by curtesy and in dower, arising by operation of law upon the death of the wife or husband, as the case may be, seem to fall properly under the head of title by descent. See Co. Litt., 18 b, and n. 106. Chancellor Kent then quotes an authority in support of this proposition in the following language: 'The learned author of the article Alienage, in the American Law Magazine for October, 1843, has referred to authorities in favor of the proposition, and particularly to the strong case of Pemberton v. Hicks, 1 Binney, 1.' The 'learned author' above referred to is the Hon. George W. Biddle, of the Philadelphia Bar. See 4 Kent Com., 374."

The case of Pemberton v. Hicks thus referred to contains the statement by Yeates, Jr. (page 16), that "it is fully settled that tenants by the curtesy and in dower come in by descent, merely by act of law: Co. Litt., 18 b."

In Cooke v. Doron, 215 Pa. 393, it is held that title by curtesy is one by descent, and numerous text-book writers are cited to substantiate that statement not only in regard to curtesy but also as to titles in dower.

In the very recent case of Scaife v. McKee, 298 Pa. 33, it is definitely ruled that the Intestate Act of 1917 is not unconstitutional because of any defect in its title, arising from the inclusion in the act of provision for the husband's curtesy. The court holds that curtesy is an estate by descent, and since the title of the act refers to the "descent" of property, it is sufficient to cover the provision as to curtesy.

It is true that a widow does not take her dower as an heir of the husband. But the point is, that a title may come by descent and yet not as by way of inheritance to an heir. All that is necessary is that it should vest by "the single operation of law."

It would seem clear, therefore, that dower, being a title by descent, is properly included within the title "relating to the descent" of property of persons dying intestate. The confusion evidenced in the argument of defendants arises from the fact that they assume that the title indicates that the property, the descent of which is involved, must be owned by the person dying intestate at the time of his death. This same confusion would appear to exist in the dictum in Stockdale's Estate, supra, where the learned writer of that opinion says (page 1021) that "it might be argued with effect that the failure of the title of the statute to reveal its intendment to govern real estate other than that of which decedents die seised renders the provisions as to such aliened lands unconstitutional and inoperative." There is nothing, however, in the title of the act which indicates that it refers only to such real estate as that of which the decedent dies seised. If the title of the act were "An act relating to the descent and distribution of the real and personal property of persons dying intestate *and of which they remained seised at the time of their death*," obviously the section here under consideration would not be included in such title. In the matter of dower, however, as already pointed out, the wife takes by descent from the person who owns the property [the husband], even though he has aliened it before his death. It is incorrect in this sense to say, as argued by the defendants, that it is her own property, and that it is acquired by her independently of her husband's title. On the contrary, she obtains it only by and through his title; her right inchoate attaches to it when he purchases it and still exists in her when he aliens it, but that right becomes consummate only upon and by virtue of his death, and it is at the time of his death and by virtue of his death that she obtains by descent the consummate title to the dower right, even though he himself is then no longer seised of the title. It is only at the time of the husband's death that her interest can be determined, since that interest depends upon the number of children surviving the husband. Indeed, even then she has no estate in the land upon which she can maintain an action of ejectment until the dower is actually assigned to her: Jones v. Hollopeter, 10 S. & R. 326. It is not the alienation of the property by the husband that vests in her any rights or affects her estate; on the contrary, there are only two steps in the perfection of her title—the one when the property is purchased by the husband, and the other when the husband dies (followed by the assignment of the dower to her).

For these reasons, and especially in view of the legal principle that the title of an act should not be found to be defective unless it is clearly so, the court is of opinion that a provision fixing the amount of the interest or share of the wife's statutory dower in lands aliened by her husband in his lifetime is properly included in and germane to a title which states the subject-matter of the act to be the "descent" of property.

If, as now held, the Intestate Act of 1917 governs the present controversy, and is constitutional as to the section in question, there remains to be considered the amount of the share or interest which the wife takes in accordance with the provisions of that act. It is stated therein that her share should be the same as her share in lands of which her husband died seised. In order to determine what the latter share is, we must refer back to section 1 *(a)*, which provides that where the intestate leaves a spouse surviving and one child only (which is the present case), the spouse shall be entitled to one-half part of the real and personal estate. It, therefore, appears that the plaintiff is entitled to one-half part of the real estate in question. But the real estate in what form, in a value as of what time, and subject to what encumbrances?

All that section 3 provides is that her share shall be the same as her share in lands of which her husband died seised, and obviously the purpose of this clause is merely to provide that, whereas, before the act, the widow would have been entitled only to a one-third life interest in land aliened by her husband in his lifetime, she is thenceforth to be entitled to a one-third interest in fee simple (or, where there is only one child, to a one-half interest in fee simple), just as previous acts had provided for an estate of statutory dower in lands of which the husband died seised. There is nothing, however, which provides or indicates that the real estate aliened by her husband and in which her share is thus fixed shall be considered as of the same value, or as of the same physical condition, or subject to the same encumbrances, as it might or would have been had the husband continued to own the property and been seised thereof at the time of his death. When it is remembered, as will be presently pointed out, that there were certain important common-law limitations and qualifications of the widow's dower right in the case of land aliened by the husband in his lifetime, it is not believed that section 3 is to be construed as intending to sweep away all such limitations and qualifications and as not only substituting for the situation as it existed at common law a difference in the share which the wife takes, but also abolishing all the previously existing rules of dower appertaining thereto. On the contrary, it is thought that, as above indicated, it was meant merely to change the share or proportionate interest which she was to receive in such property. This would seem to be the correct viewpoint, especially in view of the fact that, notwithstanding the numerous statutes which have been passed giving the widow a statutory right to a part of her husband's real estate in lieu of common-law dower, it has always been held that the new interest thus created is itself in the nature of dower, merely amounting to an enlargement or modification of the dower interest, and that the widow continues to take thereunder as doweress and not by inheritance, as do the heirs of the husband. An interesting decision of this nature is that of Schwarz *v.* Schwarz, 3 Erie Co. L. J. 254. See, also, 19 Corpus Juris, 459, § 6.

It is well settled under the common law of Pennsylvania that in such case the widow shall be endowed according to the value of the land at the time her dower shall be assigned to her. If between the time the husband aliened the land and the time of the assignment of the dower the land has increased in value the widow receives the benefit of such increase; and, on the other hand, if there has been a depreciation in value during that period, it must be borne by her. But the widow can take no advantage of improvements of any kind made on the land by the purchaser subsequently to the husband's alienation of the property; and, indeed, if the purchaser negligently allows the buildings which existed on the land at the time of his purchase to fall into ruin, or even wilfully destroys them, nevertheless, the widow can have no remedy in that

respect: Winder *v.* Little, 1 Yeates, 152; Thompson *v.* Morrow, 5 S. & R. 289; Shirtz *v.* Shirtz, 5 Watts, 255; Gannon *v.* Widman, 3 Dist. R. 835; Shupe *v.* Rainey, 255 Pa. 432.

Applying these principles to the present case, the plaintiff would be entitled to her dower interest in the land itself (as distinguished from the buildings and improvements erected thereon) as of the time when the dower is now assigned to her. She has no rights in regard to the garage building erected by the defendants since their purchase of the property, neither has she any remedy or redress by reason of their having torn down the building which was on the land at the time when the plaintiff's husband conveyed the property to Helen C. Bridgeford and the latter, in turn, to the defendants.

In regard to the encumbrances on the property, it appears that when the plaintiff's husband purchased the land he bought it subject to a then existing mortgage of $4000. He then placed an additional $3000 mortgage on the property, and when he conveyed it to Helen C. Bridgeford it was thus subject to mortgages aggregating $7000. When the plaintiff's husband and Helen C. Bridgeford conveyed the premises to the defendants, these mortgages were paid off and a new mortgage of $23,000 placed on the property by the defendants. In regard to these matters, it is clear that the mortgages in the sum of $7000 which were on the land at the time the husband aliened it were then paramount to the plaintiff's right of dower. It is equally clear that her right is not impaired by nor subordinate to the new mortgage of $23,000 placed upon the land by the defendants after their purchase of the property. The only real question in the case is with regard to the situation arising from the fact that the mortgages of $7000 were paid off when the defendants purchased the property. As to this circumstance, the law seems to be that "where the heir or some other person having the right to redeem has redeemed land from a mortgage which was superior to the dower interest of the widow of the mortgagor, the widow must contribute her ratable proportion of the amount paid before she can be endowed of any portion of the mortgaged lands, and if she fails to do so, she is entitled to dower in the equity of redemption only:" 19 Corpus Juris, 488, § 92. It thus appears that the plaintiff's right to dower in the present case is subject to the mortgages of $7000, even though they have been paid off since the husband aliened the property to Helen C. Bridgeford, and she must either take her dower subject to said amount of mortgages or, which amounts to the same thing, must contribute her ratable proportion to the amount thereof.

The plaintiff also claims damages for detention, such damages ordinarily consisting of the rents and mesne profits which would have accrued to her from her estate in dower from and after the time of her husband's death. In the present case, however, it would seem that she is not entitled to such damages. At common law a widow was not entitled to damages for detention in an action of dower. By the Statute of Merton, 20 Hen. III, c. 1, it was provided that the widow should receive the one-third of the annual value of the land as damages for the period of detention, but it has been held that the Statute of Merton applies only where the husband died seised of the land, and is not applicable where he aliened the property in his lifetime. Nor can she recover costs, because these are awardable to the widow only by virtue of the Statute of Gloucester, 6 Edw. I, c. 1, which provides for them only in cases where damages are recoverable: Sharp *v.* Pettit, 3 Yeates, 38; Barnet *v.* Barnet, 15 S. & R. 72; Benner *v.* Evans, 3 P. & W. 454; Seaton *v.* Jamison, 7 Watts, 533; Conklin *v.* Bush, 8 Pa. 514; Gannon *v.* Widman, 3 Dist. R. 835. It is to be noted in the present case that there was no evidence of demand for

the assignment of dower having been made before the bringing of suit, and the defendants have pleaded *tout temps prist*. Under such circumstances particularly, costs are not recoverable: Gannon *v*. Widman, 3 Dist. R. 835. The Intestate Act of 1917 contains no provision in regard to the subject of damages or costs, and, therefore, leaves the rights of the widow in respect thereto as at common law. In the present action, therefore, the plaintiff, as appears from the authorities cited, is not entitled either to damages for detention or costs.

The defendants have urged that, since the plaintiff's husband conveyed title to Helen C. Bridgeford by deed of warranty covenanting and warranting a good title to the grantee, and since a similar deed of warranty was given by the plaintiff's husband and Helen C. Bridgeford to the defendants, the latter would have a right of action on such warranty against the estate of the plaintiff's husband, and such liability would exactly equal the extent of the plaintiff's dower rights. With this contention, however, the court is not concerned in the present case, which is "strictly a real action:" Jones *v*. Patterson, 12 Pa. 149. We have no evidence in regard to the estate of the plaintiff's husband, and as to whether it contains assets from which the defendants can recover on their alleged claim under their deed of warranty. Certainly such a claim cannot be used as a defense or a set-off to an action by the wife to recover her dower interest.

Defendants also have argued the question as to the nature of the remedy which the plaintiff can obtain in execution on any judgment which she may recover in the present case. They point out that no money judgment can be awarded to the plaintiff, and that a writ of seisin is inapplicable, since the plaintiff cannot, under the circumstances, have her dower assigned to her by metes and bounds. This is true because of the complications resulting from the fact that the plaintiff, for reasons already set forth, is not entitled to an interest in the improvements now existing on the land, and, on the other hand, is subordinate to mortgages previously encumbering the property but now paid off. The cases hold that, under such circumstances, some other equitable method of handling the situation must be employed. Prior to the Intestate Act of 1917, when the wife's dower interest was an estate in one-third of the property for life only, one of the methods employed was to decree to her the payment of an annual sum, which was made to constitute a charge on the land: Gannon *v*. Widman, 3 Dist. R. 835. While the jury in a dower action was not allowed in its verdict to find the value of the land (Leineweaver *v*. Stoever, 17 S. & R. 297), there is authority to the effect that, where necessary for practicability, there may be an inquest made by commissioners or otherwise to determine the absolute value of the wife's dower interest, which shall thereupon be charged upon the land as a lien. In this case such lien would, of course, be prior in security to the mortgage placed upon the property by the defendants, that mortgage being subordinate to the plaintiff's dower rights in the property. See Shupe *v*. Rainey, 255 Pa. 432 (more particularly the cases cited therein, pages 441-443) ; also, 19 Corpus Juris, 580, 581, § 374, and, in general, pages 584-588, §§ 387-392. However, this question does not arise in the present stage of the controversy, and is to be determined when the plaintiff shall seek execution on the judgment herein entered.

For the reasons thus stated, the court overrules the defendants' motion for judgment on the point reserved (defendants' ninth point for charge), and, in accordance with the verdict of the jury and the agreement of counsel that the court should determine the nature and extent of the plaintiff's dower right, directs that judgment be entered that the plaintiff recover against the defend-

ants, as tenants of the freehold, a one-half absolute or fee simple interest in the premises for which the action in dower is brought, according to the value of the land at the time the plaintiff's interest is assigned to her, but without any benefit to her of improvements which have been erected thereon since the alienation of the property by her husband, and less her proportionate part of the mortgages previously encumbering the property in the amount of $7000, and without any damages, mesne profits or costs.